Loch et ux., Appellants, *v.* Confair et ux.

Argued November 11, 1948. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Daniel J. Flood,* with him *James L. Brown,* for appellants.

*William S. McLean,* with him *James P. Harris,* for appellees.

OPINION BY MR. JUSTICE PATTERSON, January 3, 1949:

Frank J. Loch and Catherine T. Loch, his wife, appellants, instituted this action in assumpsit against Charles N. Confair and Rena P. Confair, his wife, doing business as Confair's Beverage Company, appellees. The complaint set forth that the husband, while shopping in a self-service Great Atlantic & Pacific Tea Company Super Market, selected and picked up two bottles of "Yukon Club Sparkling Pale Dry Ginger Ale" bottled by appellees, and thereupon one of the bottles exploded and glass therefrom entered the right leg of the wife appellant causing serious injury. Appellees filed preliminary objections to the complaint asserting that appellants failed to allege (1) any contract between the parties to the action and (2) any contract between appellants and Great Atlantic & Pacific Tea Company from which might arise an implied warranty under The Sales Act: Act of 1915, P. L. 543, Section 15, 69 PS 124. The court below sustained the preliminary objections and judgment was entered in favor of appellees. This appeal followed.

Appellants, on April 4, 1947, entered the self-service store of the Great Atlantic & Pacific Tea Company in Wilkes-Barre. The husband selected two bottles of "Yukon Club Sparkling Pale Dry Ginger Ale" and was about to place them in his merchandise cart when one bottle exploded and a piece of glass therefrom struck appellant wife in the leg, causing serious injury. On the bottle was the statement, "Bottled for the Great Atlantic & Pacific Tea Co., New York, N. Y. by Confair's Beverage Company, Berwick, Pa., U. S. A." Appellees were engaged in the business of manufacturing and

bottling a carbonated drink known as "Yukon Club Sparkling Pale Dry Ginger Ale." This product was sold and delivered to the Great Atlantic & Pacific Tea Company for resale in stores. Paragraph 6 of the complaint avers:

"That the said sales were made by the defendants to the said Great Atlantic & Pacific Tea Company coupled with a warranty, implied by reason of the provisions of Section 15 of the Sales Act of May 19, 1915, P. L. 543 (69 PS 124), that the said beverage and the bottle in which the same was contained was fit and safe for the purpose for which it was intended, to wit, to be stored and sold in the stores owned and operated by the said Great Atlantic & Pacific Tea Company, and further, that the said beverage and the bottle in which it was contained could be safely handled by employees and customers of the Great Atlantic & Pacific Tea Company."

The basis of appellant wife's claim for damages was the injuries sustained, permanent disfigurement and great shock. The appellant husband's claim for damages was based upon loss of services and companionship of his wife and reimbursement for medical expenses incurred in the treatment of his wife.

Appellants contend that (1) proof of a contractual relation between a manufacturer and a consumer of packaged food or drink is not necessary to impose civil liability for injury, there being a right to waive the tort and sue in assumpsit; (2) in self-service retail stores passing of title to an article to a consumer is not postponed until payment therefor but occurs immediately upon his selection of the article; and (3) the implied warranty of fitness for human consumption arising from sale of the article extends to the container as well as to the contents of a bottle. Appellees contend that (1) title to the bottles of ginger ale never passed to appellants and (2) the cause of action, if any, is in trespass for

negligence. The judgment appealed from must be affirmed.

Appellants have based this action in assumpsit upon a warranty "implied by reason of the provisions of Section 15 of the Sales Act of May 19, 1915, P. L. 543 (69 PS 124), that the said beverage and the bottle in which the same was contained was fit and safe for the purpose for which it was intended, to wit, to be stored and sold in the stores owned and operated by the said Great Atlantic & Pacific Tea Company, and further, that the said beverage and the bottle in which it was contained could be safely handled by employees and customers of the Great Atlantic & Pacific Tea Company." They do not rely upon either a negligent preparation or manufacture of the bottle.

This Court has recognized that a person who has effected the purchase of particular goods and sustains injury because of unfitness for an intended purpose may institute an action in assumpsit based upon a breach of implied warranty or an action in trespass based upon specific averments of negligence. In both instances the elements of damage may be identical, viz., the damage naturally and proximately resulting from a breach of implied warranty or a breach of duty: *Bonenberger v. Pittsburgh Mercantile Co.*, 345 Pa. 559, 28 A. 2d 913; *Rozumailski v. Philadelphia Coca-Cola Bottling Co.*, 296 Pa. 114, 145 A. 700. See *Jones et ux v. Boggs & Buhl, Inc.*, 355 Pa. 242, 49 A. 2d 379. An election of remedies in this regard has, however, never been held by this Court to authorize institution of a contract action based upon averments of negligence. Nor, conversely, has it authorized institution of a negligence action based upon averments of contract. Essential distinctions which exist have been recognized. While there is a distinct tendency toward relaxation of the strictness of the common law as regards pleadings, a plaintiff cannot successfully maintain an action in one form by averring

facts establishing a valid cause of action if properly brought in another form. It is immaterial that the damages recoverable might be identical. See *Bonenberger v. Pittsburgh Mercantile Co.*, supra, 561.

Appellants cite *Nock v. Coca-Cola Bottling Works of Pittsburgh*, 102 Pa. Superior Ct. 515, 156 A. 537, to sustain their contention that the form in which the action is brought and the nature of the averments in the complaint are immaterial provided that a cause of action exists. See also *New York and Pennsylvania Co. v. New York Central R. R.*, 267 Pa. 64, 110 A. 286. It is unnecessary to pass upon what was there stated. It is sufficient that in the instant case appellees, by preliminary objections, promptly challenged the sufficiency of the complaint to maintain this action in assumpsit. Limited therefore by the pleadings which allege a cause of action based on an implied warranty, it is incumbent upon appellants to establish a contractual relationship, —more specifically, a sale, or contract of sale, of bottles of ginger ale to them or to the husband appellant.

Appellants of necessity challenge the holding of the court below that title to the bottles of ginger ale had not been transferred to them at the time of the explosion. It is argued that title passed to them immediately upon their having selected the bottles from the retailer's shelves, subject to being revested in the retailer if restored to the shelf by them prior to taking it to the checker and cashier. Rule 3, First, of Section 19 of The Sales Act of 1915, P. L. 543, 69 PS 143, is relied upon in support of that contention.[1] This section must be

---

[1] "When goods are delivered to the buyer 'on sale or return,' or on other terms indicating an intention to make a present sale, but to give the buyer an option to return the goods instead of paying the price, the property passes to the buyer on delivery, but he may revest the property in the seller by returning or tendering the goods within the time fixed in the contract, or, if no time has been fixed, within a reasonable time."

read in conjunction with Section 42 of The Sales Act, supra, 69 PS 252.[2]

To sustain appellants' contention would require that the law remain blind to reality and completely ignore established basic legal concepts. A sale is effected only by agreement of the parties to the transaction. An executory contract of sale is also founded upon a mutual agreement as regards the terms and conditions upon which the sale is to be effected. Appellants' contention that a contract of sale has been shown is untenable for two basic reasons: (1) no "agreement" as regards the sale of the article has been shown; and (2) there has been no "delivery" by the seller.

The sale in a self-service store differs materially from the ordinary cash sale made over the counter. In the latter, the order for the goods, the payment of the price, delivery to the customer, and the passing of title to the goods all occur at substantially the same time. The modern form of sale in a self-service store is of comparatively recent origin. There is required of the customer certain acts before he can complete purchase of any goods. The customer selects and collects the goods he desires to purchase and conveys them in a merchandise cart supplied by the retailer to a checker or cashier. Customers are invited to take possession of the goods that they intend to purchase. This possession is not the equivalent of delivery of the article to the buyer. We need not now decide the time at which the retailer intends to part with title. There are various methods used in self-service stores. In some a checker itemizes the goods selected by the customer and presents the customer with a statement for the costs thereof, and

---

[2] "Unless otherwise agreed, delivery of the goods and payment of the price are concurrent conditions; that is to say, the seller must be ready and willing to give possession of the goods to the buyer in exchange for the price, and the buyer must be ready and willing to pay the price in exchange for possession of the goods."

receives cash in payment therefor. In others there are separate cashiers whose sole function is to receive from the customer the amount of money shown by the statement of the checker to be due. It is sufficient in the instant case to hold that selection by the customer is insufficient to pass title to the article. In Williston on Sales, Revised Edition (1948), it is said:

"So in self-service shops where the buyer selects and picks up goods and pays for them when he passes the cashier's desk, it is a cash sale; the buyer may replace the goods that he has chosen until he comes to the desk and pays the price."

The court in *Lasky v. Economy Grocery Stores,* 319 Mass. 224, 65 N. E. (2d) 305, was presented with the same question here under consideration. Plaintiff had selected six bottles of tonic from a shelf and placed them in a merchandise carrier. She had selected a seventh bottle which exploded in her hand and before it could be placed in the carrier. It was there contended that the selection by her constituted "delivery" and that title thereupon passed to her subject to her reserved right to revest it in the retailer. The court, holding that no contractual relation arose between the parties with reference to the sale of the tonic, said:

"It is true that customers were invited to take possession of the goods that they intended to purchase and, if such possession may be considered the equivalent of a delivery of the bottle of tonic, such delivery was conditional and was made only for the purpose of permitting the customer to take it to the cashier. Possession alone was not in these circumstances sufficient to pass title to the bottle. . . .

"It is plain upon the plaintiff's own testimony that it was optional with her to return the article she had selected or to keep it and later become the purchaser, and there is nothing to show that the defendant could compel her to purchase the bottle as soon as she selected

it, or could have prevented her from returning it to the case, or that it become bound as soon as she selected it to sell it to her. The plaintiff has failed to show that, just before the time she was injured, she had become bound to purchase the bottle and that the defendant had become bound to sell it to her."

Having concluded that there was no executed sale or an executory contract of sale and hence no warranty, expressed or implied, there is no occasion to consider appellants' third contention that an implied warranty of fitness for human consumption arising from the sale of an article would extend to a bottle in which ginger ale is contained as well as the ginger ale itself.

Judgment affirmed.