## Sincavage et ux. v. Armour and Company

Before Flannery, Lewis and Pinola, JJ.

*Floyd G. Yoskoski*, for plaintiffs.

*Benjamin R. Jones, Jr.*, for defendant.

PINOLA, J., July 25, 1950.—Plaintiffs, husband and wife, brought this action in assumpsit against defendant for damages sustained through the illness of the wife resulting from the eating of frankfurters purchased by her from the dealer to whom defendant, manufacturer, had sold them. Defendant has filed preliminary objections in the nature of a demurrer.

On January 9, 1949, she purchased the frankfurters from Joseph Rusaskas at his meat market located at 56 Penn Street, Kingston. Plaintiffs claim that immediately after eating them she "became violently ill and nauseated, requiring the services of a physician. . . ." Also "that by reason of the deleterious matter contained in said frankfurters (she) suffered a stomach condition and severe shock to her nervous system".

Defendant has filed the following seven reasons:

1. Plaintiffs fail to allege any contract between plaintiffs and defendant.

2. Plaintiffs fail to allege any contract between themselves and defendant such as would give rise to any implied warranty on the part of defendant under the Sales Act.

3. Plaintiffs' complaint fails to state any action at law in assumpsit.

4. Plaintiffs' complaint fails to aver any fact sufficient to create any implied warranty under the law regarding the sale of goods.

5. There is no privity of contract alleged between defendant and either of plaintiffs and, therefore, there can be no recovery based on an implied warranty as to defendant.

6. There is no privity of contract between Charles Sincavage and defendant, and, therefore, there can be no recovery based on an implied warranty as to the male plaintiff against defendant.

7. It is not averred that the matter in question was packed in an original, unbroken package or container by defendant and, therefore, there could be no implied warranty in the absence of privity of contract.

## Discussion

At common law a vendor was not answerable to the vendee for any defect of quality in chattels sold unless he had given an express warranty. However, an exception was made to this rule and one who was engaged in the sale of food or drink was held to be under a public duty to sell articles that were wholesome. This special obligation, according to old authorities, rested, in part at least, on an old statute. But whatever the basis of the doctrine, it was laid down broadly by Blackstone, 3 Comm. 166, that "in contracts for provisions, it is always implied that they are wholesome; and if

they be not, the same remedy (damages for deceit) may be had": 1 Williston on Sales (rev. ed.) 633, sec. 241.

Although that was the law in Pennsylvania (McNaughton v. Joy, 1 W. N. C. 470), for some reason the legislature provided in the Act of May 4, 1889, P. L. 87, that:

"In every sale of green, salted, pickled or smoked meats, lard and other articles of merchandise, used wholly or in part for food, said goods or merchandise shall correspond in kind and quality with the description given, either orally or in writing, by the vender; and in every sale of such goods or merchandise, unless the parties shall agree otherwise, there shall be an implied contract or understanding that the goods or merchandise are sound and fit for household consumption."

Perhaps it intended to extend the liability because that statute has been construed to impose a liability where none previously existed on a vendor who sold the products to a middleman who purchased not for consumption but for the purpose of resale: Weiss v. Swift & Co., 36 Pa. Superior Ct. 376.

In 1915 Pennsylvania adopted the Uniform Sales Act of May 19, 1915, P. L. 543, 69 PS §1, et seq. Section 15 of that act (69 PS §124) provides as follows:

"Subject to the provisions of this act and of any statute in that behalf, there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows:

"First. Where a buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose."

The distinction between the law applicable to food products and other chattels had, during the years, been gradually whittled away so that when the Sales Act was adopted in England and the United States, no special mention of food products was necessary. While this act did not repeal the Act of May 4, 1889, it is clearly applicable to food products.

Perhaps, for that reason the legislature in the Act of May 21, 1943, P. L. 539, repealed the Act of 1889.

So, for a solution of the problem which besets us, we must go back to the common law.

The rule that warranties are enforcible only by an immediate purchaser has been held applicable in a number of cases where food or beverages have been sold to a subpurchaser. Some recent cases, however, have imposed the absolute liability of a warrantor on a manufacturer in favor of the ultimate purchaser: 1 Williston on Sales, 647, sec. 244.

Catani v. Swift & Co., 251 Pa. 52, is in the latter group. In that case the court said (p. 57) :

"Public policy regards the public good. . . . The obligation of the manufacturer . . . should rest . . . upon 'the demands of social justice'."

Defendant contends, however, that now a manufacturer is not responsible unless his merchandise was sold in the original package to the person who is injured. In support of this position it cites the language of Nock v. Coca-Cola Bottling Works, 102 Pa. Superior Ct. 515, 521, as follows:

"A manufacturer may not ordinarily be liable to those with whom he has no contractual relation, but if he puts goods upon the market in a bottle or original package, he, in effect, represents to each purchaser that the contents thereof are wholesome and suitable for the purpose for which they are sold, and the common law doctrine of caveat emptor does not prevail."

Although plaintiffs do not aver that the frankfurters were sold in an original container, their counsel argues that the casing of the meat constitutes an original container. Without deciding whether the casing is a container or not, we hold that a manufacturer is responsible whether the merchandise was sold in a container or sold in bulk. Justice Parker made this clear in Bonenberger et al. v. Pittsburgh Mercantile Co., 345 Pa. 559. He there pointed out that while some States do make such an exception, there is no reason for making an exception where the food is sold in original containers. He said (p. 561) :

"The seller's obligation in this suit is not based on negligence but upon warranty."

We, therefore, overrule objection 7.

Dealing collectively with the remaining objections, 1 to 6 inclusive, we find that they present a more serious problem. Who may sue for breach of warranty? Must there be privity?

Clearing the atmosphere, the court in Henderson v. National Drug Co., 343 Pa. 601, has finally placed the responsibility of a manufacturer of all chattels for negligence in the law. All fiction is cast aside, and following MacPherson v. Buick Motor Co., 217 N. Y. 382, 111 N. E. 1050, 1053, and using the very words of Judge Cardozo, Justice Maxey said (p. 611) :

"It is, of course, not necessary to plead a warranty in cases like this, for the action is based upon a breach of duty *imposed by law*. 'We have put aside the notion that the duty to safeguard life and limb, when the consequences of negligence may be foreseen, grows out of contract and nothing else. We have put the source of the obligation where it ought to be. We have put its source in the law'."

So that today all actions based on negligence relating to foods and beverages are governed by the same law that governs actions relating to all other chattels, to

wit, A. L. I. Restatement of the Law of Torts §395, which reads as follows:

"A manufacturer who fails to exercise reasonable care in the manufacture of a chattel, which, unless carefully made, he should recognize as involving an unreasonable risk of causing substantial bodily harm to those who lawfully use it for a purpose for which it is manufactured and to those whom the supplier should expect to be in the vicinity of its probable use, is subject to liability for bodily harm caused to them by its lawful use in a manner and for a purpose for which it is manufactured."

Both the husband and the wife could, if they desired, sue this defendant for negligence. But in doing so they would assume a greater burden than in a suit for breach of warranty, although the court did say in Henderson v. National Drug Co., supra (p. 612), that proof of illness or death following consumption of food shortly after its acquisition establishes a prima facie case of negligence.

Had plaintiffs in Tavani v. Swift & Co., 262 Pa. 184, sued on the breach of warranty, they might have fared better. When they sued in trespass they opened the door to proof by defendant that it had exercised every precaution, and therefore, was not guilty of negligence. Justice Frazer pointed out (p. 187):

"The action being in trespass for negligence *and not for breach of warranty*, the evidence was competent and sufficient to sustain the conclusion of the jury that defendant omitted no precaution or duty it owed plaintiff." (Italics supplied.)

In Loch et ux. v. Confair et ux., 361 Pa. 158, the court emphasized the distinction between a suit based on negligence and one based on warranty. In that case, plaintiffs, husband and wife, were in a self-service grocery store. The husband was engaged in placing a bottle of ginger ale in a basket when it exploded, in-

juring the wife, who was a bystander. Suit was brought in assumpsit. We held that it should have been brought in trespass and the Supreme Court agreed. There could be no action in assumpsit for breach of warranty because there had been no sale of the ginger ale.

The court in Cushing v. Rodman, 82 F.(2d) 864, declared that the public is entitled to have the double protection, the right to sue for breach of warranty or for negligence. Logically, however, suit on an implied warranty should only be allowed between the parties to the contract of which the law makes such implied warranty a part. We dare to hope that in the not distant future this right will be so limited.

In this case the wife made the purchase and she alone was injured. If she may recover in assumpsit, the question arises whether her husband may also. That very question was before the court in Bonenberger v. Pittsburgh Mercantile Co., supra. It was argued that the husband was not entitled to recover because he "is not within the warranty'. Justice Parker did not decide the question, but said (p. 564) :

"If this case must be retried the proper time to dispose of this question is when the facts are shown on the new trial."

So, we too, for the time being, will not decide this question but we will confine our attention to the right of the wife to maintain this action.

Judge Arnold takes the position that since Loch v. Confair, supra, one who sues in assumpsit upon an implied warranty of fitness must show privity between plaintiff and defendant: Dillon v. Scull Co., 164 Pa. Superior Ct. 365, 371. We do not believe the case goes that far. And, until the Supreme Court says so, we hold that such privity is not necessary.

Many courts have engaged in devious ways to supply the requirement of privity. However, we choose to hold that when the right was given to a consumer to sue on

286

an implied warranty, it was not limited to suit against the immediate seller. Therefore, a consumer who has been injured may sue a dealer or the manufacturer.

As we noted at the outset, this right was an exception to the early rule governing chattels and was created because the calling, to wit the sale and service of food, was affected with a public interest. A taverner or vintner was bound as such to sell wholesome food and drink. He "was under a public duty, from the nature of his calling, to sell articles of a certain quality": Ames, The History of Assumpsit, 2 Harvard Law Review, 1, 9. The reason still prevails.

We conclude that objections 1 to 6 inclusive are without merit. And we enter the following

*Order*

Now, July 25, 1950, the preliminary objections of defendant are overruled and defendant is required to file an answer within 20 days from the date hereof.