Silverman, Appellant, *v.* Samuel Mallinger Co.

Argued October 9, 1953. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY and ARNOLD, JJ.

*Harold R. Schmidt,* with him *John L. Laubach, Jr.,* and *Rose, Rose & Houston,* for appellant.

*Drayton Heard,* with him *David Glick* and *Heard & Heard,* for appellees.

OPINION BY MR. JUSTICE CHIDSEY, November 9, 1953:

This is an action in assumpsit for damages brought by Alvin Silverman, trading and doing business as Howard's Food Products, hereinafter called Silverman, for alleged breach of an express warranty. Plaintiff pleaded three alternative causes of action: (1) against Samuel Mallinger Co., a corporation, hereinafter called Mallinger, averring a sale to the plaintiff by Mallinger in its own behalf, with an express warranty by Mallinger in its own name, (2) against Knox Glass Associates, Inc., hereinafter called Knox, averring a sale to plaintiff by Mallinger as agent of a disclosed principal, Knox, with express warranty of Knox by its agent Mallinger, (3) against Oil City Glass Bottle Co., hereinafter called Oil City, averring a sale to plaintiff by Mallinger as agent of an undisclosed principal, Oil City, with express warranty of Oil City by its agent Mallinger.

Prior to August 8, 1948 the plaintiff, who was in the pickle business, used exclusively glass jars manufactured by Tygart Valley Glass Co. On August 8, 1948 he purchased from Mallinger, through its duly authorized representative, Emanuel Mallinger, the glass jars in question.

At the outset it is important to note the procedure by which the sale was executed. Mallinger upon receiving the order from the plaintiff, purchased the jars from Knox, which is the sole sales agent of Oil City, the manufacturer of the jars. Oil City shipped the jars directly to the plaintiff and Knox invoiced Mallinger, who in turn invoiced the plaintiff directly.

The shipment arrived at the plaintiff's plant on the morning of August 9th, where it was put into immediate use on the plaintiff's production line. The washed pickles were placed in the jars, which were capped by machine and put into retort crates and then cooked

at high temperatures so as to finish and pasteurize the pickles. After this the finished pickles in jars were cooled, placed in cardboard cartons and thereafter were inverted and stored. An unusually high amount of breakage of glass occurred during the packing of the raw pickles in the glass and also in the cooking process. The breakage was immediately reported by telephone to an officer of Mallinger who told plaintiff to continue to use the glass and defendant Mallinger would take care of the damages caused by the breakage.

Subsequent to this it was discovered that the jars in question leaked and had caused damage to other stored jars. Plaintiff set forth damages amounting to $5,384.25 in his complaint and Mallinger filed a counterclaim seeking to recover from the plaintiff the sum of $720, the sales price for the jars purchased by the plaintiff. The jury returned a verdict in favor of plaintiff against Knox in the amount of $3,220 and a verdict against the plaintiff in favor of Mallinger for its counterclaim in the sum of $720.[1]

The defendant Knox moved for judgment non obstante veredicto relying principally on the ground that there was no privity of contract existing between Knox and the plaintiff. After argument before the court en banc, judgment non obstante veredicto was ordered to be entered in favor of Knox. From that judgment the present appeal was taken. No motion for a new trial or otherwise was filed with respect to the verdict in favor of Mallinger; and no appeal has been taken from the judgment entered upon that verdict.

---

[1] The jury failed to render a verdict as to Oil City. However, it was subsequently stipulated by counsel that the same judgment might be entered as to Oil City as should be entered against Knox upon final disposition of the case.

Plaintiff sought to recover upon an express warranty running from Knox to the plaintiff by contending that Knox authorized Mallinger to bind Knox with a warranty.

It appeared from the plaintiff's own testimony that he intended to bargain with Mallinger exclusively and that he had no actual knowledge of the connection that existed between Mallinger and Knox. There was not sufficient evidence introduced to establish any relationship of principal and agent between the latter. There was testimony that during twenty years of business dealings between Mallinger and Knox, Knox dealt solely with Mallinger and was not the least concerned with any future disposition of Knox merchandise made by Mallinger other than carrying out the latter's orders as to shipment. Knox always looked to Mallinger for payment and invoiced it directly. Mallinger, in turn, invoiced its customers and looked solely to them for payment. Under all the evidence Mallinger fell clearly within the category of jobber or middleman as distinguished from broker or agent. Appellant does not seriously contend that Mallinger was the agent of Knox and his argument in this Court does not rest upon an agency relationship but upon the broader contention that irrespective of any agency relationship, an express warranty ran from Knox to the plaintiff as a direct obligation, supported by the consideration of the plaintiff's purchasing the jars—that the warranty came into being by representations which Knox authorized Mallinger to make to the plaintiff.

Fatal to this contention is that under all the evidence, considering it and all reasonable inferences therefrom in plaintiff's favor, he failed to establish that Mallinger made any representation to plaintiff authorized by Knox that amounted to a warranty. The representations relied upon by plaintiff are that Mal-

linger stated to plaintiff that Knox jars were as good as anybody else's and would suit the plaintiff's purposes in processing pickles. Plaintiff relies upon the testimony of Emanuel Mallinger, the secretary and treasurer of the Mallinger Co., called as a witness for plaintiff, and to an extent on testimony of Wilbur W. McElhattan, Knox's general sales manager, a witness for the defendant Knox. Mallinger testified as follows: "A. *They [Knox] always said their ware would stand up as well as anybody else's ware.* Q. That is not the question. *Did they tell you that you could say that?* A. *Yes, sir.* Q. And is that what you told Mr. Silverman in discussing the prospective purchase of this Knox ware; that is, before he bought it? A. I said, 'Silverman, *this ware is as good as anybody else's ware'.* Q. You knew, didn't you, generally speaking, how the Howard Food Products Company manufactured pickles? You had been up there and saw it, didn't you? A. Yes. Q. And you have been in the glass business yourself for about 20 years, you say? A. Longer than that. Q. And you are familiar with what type of glass it takes to do a particular job to fit in with certain products and be used in certain equipment; isn't that right? A. I am. Q. And on that basis isn't it a fact you told Mr. Alvin Silverman that these particular Knox jars would suit his purpose in processing the type of pickles he intended to process? A. I did. Q. And isn't it a fact that one or more of the officials of the Knox Glass Company had authorized you to make such a statement? A. *They have from time to time, but not for this particular case.* Q. No. I mean generally. A. Generally, yes.".

From this testimony it appears that Mallinger was authorized to represent to the plaintiff that the Knox ware "was as good as anybody else's ware", but on the other hand, it appears that Mallinger was not author-

ized by Knox to state to the plaintiff that Knox jars would suit the latter's purpose in processing pickles. It can readily be understood that Knox would be willing to have Mallinger represent to all of the latter's customers that Knox wares were as good as the wares of others for such an assertion or representation was a mere boosting of the product handled by Knox and did not, as we will later point out, amount to a warranty. It can equally well be understood that Knox would not indiscriminately warrant or authorize the dealers or brokers to whom it sold that its glassware would fit the particular use to which the product was proposed to be put by the purchaser from the dealer, especially where, as here, such use in the pickling process required the jars after the pickles were placed in them to withstand a high temperature, followed by cooling. There is nothing in the record to indicate that Knox knew anything about the pickling process in which the jars would be employed by the plaintiff. According to Mallinger's testimony, at times he would be authorized by Knox to make a representation that the jars would be suitable for the purposes to which they would be put by Mallinger's vendee but "in this particular case", as Mallinger testified, there was no such authorization. There was nothing in the testimony of McElhattan to the effect that Mallinger was authorized to make any such representation to the plaintiff. McElhattan's testimony at most was to the effect that Knox warranted *to Mallinger* that its products were merchantable—which amounted to nothing more than the implied warranty that would ordinarily arise as a matter of law. Prior to the sale by Mallinger to the plaintiff there were no negotiations or dealings between plaintiff and Knox.

Plaintiff seems to further contend that he is entitled to recover irrespective of any authorization for

Mallinger to make representations to the plaintiff binding on Knox. Plaintiff's counsel admits the general rule that no recovery for commercial loss may be had by the customer of the dealer against the manufacturer, based upon an express or implied warranty from the manufacturer to the dealer, but asserts that this rule is no longer sacrosanct and cites many cases claimed to have departed therefrom. However, in all of these cases the representation of quality or fitness for particular use was conveyed or intended to be conveyed by the manufacturer or original vendor to the dealer's customer (subpurchaser) by catalogue, manual, tags affixed to shipment, legend upon container, or by negotiation with the subpurchaser. We will refer to the cases chiefly relied upon.

In *Mannsz v. MacWhyte Co. et al.*, 155 F. 2d 445, where the sale was of wire rope, there were representations in the defendant wire rope manufacturer's manual which was widely disseminated to buyers and prospective buyers. The words and figures in the manual were representations as to the tensile strength of the wire rope and the purposes for which it was manufactured. In *Studebaker Corp. v. Nail*, 62 S.E. 2d 198 (82 Ga. App. 779), there was a printed warranty contained in an instrument which was given to the purchaser simultaneously with his purchase of the automobile from a middleman, the printed warranty being signed by the manufacturer, the Studebaker Corporation. In *Sebastianelli v. Frank*, 108 Pa. Superior Ct. 550, 165 A. 664, there was a separate guaranty against defects in material or workmanship issued by the manufacturer, the RCA Victor Company. In *Simpson v. American Oil Co. et al.*, 8 S.E. 2d 813 (217 N. C. 542), the defendant manufacturer had placed on a can of insecticide certain printed matter containing the words "Not Poisonous to Human Beings". In the fore-

going cases there were unqualified statements in writing by the manufacturer which were intended to be conveyed to any subsequent purchaser in order to induce a sale of the product. Upon such express promises or representations the purchaser can rely, for they compose a part of the consideration for the purchase and are meant to be conveyed to and relied upon by the purchaser. This is especially true in this day of unparalleled competitive merchandising. In *Hunter-Wilson Distilling Co., Inc. v. Foust Distilling Co.*, 181 F. 2d 543, a warranty to the original vendee was assigned by the latter to the subpurchaser, it being included in the assignment of all the vendee's assets. In his brief appellant admits that ". . . we are not concerned here with a question of assignment; what is here before the Court is the question of a direct contractual obligation.". In *Timberland Lumber Co., Limited v. Climax Mfg. Co.*, 61 F. 2d 391, stressed by appellant, a locomotive was sold by the defendant manufacturer to the plaintiff through an independent dealer. The plaintiff specified that it desired a locomotive that would develop enough power to haul 13 cars of logs of specified weight over tracks having a definite grade at a speed of 10 miles an hour. These requirements were conveyed by the dealer to the manufacturer and the latter replied that it would guarantee the tonnage that the locomotive would haul. There was voluminous correspondence between the manufacturer and the dealer before the plaintiff purchased which clearly indicated that the manufacturer intended and expected the dealer to communicate its guarantee to the plaintiff who was unwilling to enter into the contract until the manufacturer so guaranteed. We have examined all of the cases cited by plaintiff and find them inapposite or distinguishable from the present case.

Turning to the statement made by Mallinger to plaintiff that Knox ware was "as good as anyone else's ware", we fully agree with the court below that this was mere "puffing" and did not amount to a warranty. ". . . the law permits a seller to exaggerate, puff, or enhance the quality, and thus adopt the maxim of the civil law, 'simplex commendatio non obligat.'": 46 Am. Jur., Sales, §326. A decision of this Court directly in point is *Jarecki Mfg. Co., Ltd. v. Thomas R. Kerr,* 165 Pa. 529, 30 A. 1019, where it was held that a representation that vendor's merchandise was as good as any in the market did not constitute a warranty. There the purchaser's agent went to the manufacturer's representative to purchase gas well supplies. The latter stated they were selling Pennsylvania tubing. The agent of the purchaser remarked that at one time the reputation of that pipe was not good and the manufacturer's representative replied that presently "it was as good as any in the market", as a result of which the pipe was ordered. The purchaser unsuccessfully claimed that this put him in the position of having required and received an express warranty.

Lastly, plaintiff claims that even though he failed to ask for a new trial, it would be a miscarriage of justice to allow this case to remain in such a condition that he is deprived of recovery against Knox and yet is required to pay $720 to Mallinger on its counterclaim when the jury by its verdict has found that he sustained damages from the defective jars. He therefore suggests that we order a new trial against all of the defendants under the power conferred upon us by the Act of May 20, 1891, P. L. 101. The plaintiff's case proceeded on the theory that Mallinger made the sale and Knox furnished the warranty which could account for the verdicts that resulted. Plaintiff took no exception, not even a general exception, to the trial

judge's charge. No trial error is assigned. If plaintiff felt that the verdicts were against the evidence or inconsistent, he should have made a motion for new trial in the lower court. He made no such motion or other motion, evidently choosing to stand solely on his ability to uphold the verdict against Knox. Under the circumstances, we do not regard the case as one where we should exercise our power to grant a venire facias de novo.

Judgment affirmed.