Timothy WILSON, a minor by Robert Wilson, his natural parent and natural guardian, and Robert Wilson, in his own right

v.

AMERICAN CHAIN & CABLE COMPANY, Inc.
and
Robert Wilson and Hugh Lavery.

Civ. A. No. 28172.

United States District Court
E. D. Pennsylvania.

April 16, 1963.

Dorfman, Pechner, Sacks & Dorfman, by Bernard Sacks, Philadelphia, Pa., for plaintiff.

Swartz, Campbell & Henry, by Lynn L. Detweiler, Philadelphia, Pa., for American Chain & Cable Co.

WOOD, District Judge.

The minor plaintiff and his father bring this action to recover damages for injuries sustained by the minor plaintiff when he was injured by a riding rotary power lawn mower manufactured by the defendant American Chain & Cable Company, Inc.

Separate theories of liability are pleaded and bottomed on the negligence and breach of warranties of the *manufacturer*. The Complaint does not specify whether the warranties allegedly breached were express or implied.

## DISCUSSION

At the argument on these motions the defendant conceded that the plaintiffs may amend their Complaint to allege gross and wanton negligence and claim punitive damages.

 We have recently ruled on this problem.[1] Amendment is freely allowed under Fed.R.Civ.P. 15 where no prejudice will result to the defendant.[2] Plaintiffs' proposed amendment alleging wanton negligence will not introduce a new cause of action and it is hereby allowed.[3]

The Uniform Commercial Code provides for express warranties under § 2–313 and implied warranties of merchantability and fitness for a particular purpose under §§ 2–314 and 2–315, 12A P.S. §§ 2–313 to 2–315. A sale of goods in Pennsylvania extends these warranties to the *buyer, members of the buyer's family or household,* or to any natural person who is a guest in the buyer's home.[4]

Turning now to the plaintiffs' motion to strike. They contend that a lack of privity is not a defense to a suit by a subpurchaser (or members of his family) against a manufacturer on breach of warranty principles. As authority for this proposition, we are addressed to the following cases: Thompson v. Reedman Motors, et al., 199 F.Supp. 120 (E.D.Pa. 1961); Mannsz v. Macwhyte Co., 155 F.2d 445 (3 Cir. 1946); Jarnot v. Ford Motor Company, 191 Pa.Super. 422, 156 A.2d 568 (1959), and others.

In the Thompson case a *guest* in an automobile attempted to recover damages for injuries he sustained due to a defective accelerator pedal. The defendant moved to dismiss on the ground that there was no privity of contract. Plaintiff claimed that he had a right to recover under § 2–318 (see note 4) and under Pennsylvania decisional law. Our learned colleague, Judge John W. Lord, Jr., ruled that § 2–318 of the Uniform Commercial Code did not extend to a guest in an *automobile* under the plain words of the statute. However, he did hold that privity of contract was not necessary before a guest passenger in an automobile could sue an automobile dealer and the manufacturer on the theory of breach of implied warranties of fitness for use and merchantability.

The decision in Thompson v. Reedman was based on the law as found by Chief Judge Biggs in Mannsz v. Macwhyte, supra, where the sale was of wire rope. There were representations in the defendant manufacturer's manual which was widely disseminated to buyers and prospective buyers. The representations in the manual dealt with the tensile strength of the wire rope and the purposes for which it was manufactured. The plaintiff in that case was injured when a scaffold fell after the rope broke and he was thrown to the ground. Chief Judge Biggs reasoned that the defense of lack of privity had been abolished in Pennsylvania in all breach of warranty actions.

Another important basis of the Reedman holding was that Mannsz was not affected by the Pennsylvania Supreme Court decision in Loch v. Confair, 361 Pa. 158, 63 A.2d 24 (1949). In that

---

1. Chamberlin v. United Engineers and Constructors, Inc., 194 F.Supp. 647 (E. D.Pa.1962).

2. 3 Moore's Fed.Prac., p. 804.

3. Taylor v. Reading Co., Inc., 23 F.R.D. 186 (E.D.Pa.1958).

4. Section 2–318 of the U.C.C. reads as follows:
 "A seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume, or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this section."
 Official comment 2, § 2–318, provides, inter alia:
 "2. The purpose of this section is to give the buyer's family, household and guests the benefit of the same warranty which the buyer received in the contract of sale, thereby freeing any such beneficiaries from any technical rules as to 'privity.' "

case, an assumpsit action, founded on a breach of warranty after a bottle of ginger ale exploded injuring the wife plaintiff, the Supreme Court decided that after a person has effected the purchase of an article and sustains injury because of its unfitness for an intended use he may institute an action in assumpsit based upon a breach of an implied warranty. Since no sale to the wife's husband had taken place (only a selection of the bottle had been made), no warranty was breached. In considering this holding, Judge Lord concluded in Reedman, 199 F.Supp. at pp. 123 and 124:

" * * * One may infer from the result—no warranty since title had not passed—that if the pleadings had demonstrated that the ginger ale *had been purchased,* the result would have been different."

At the time of the incident in Loch v. Confair, supra, the Uniform Sales Act was the law of Pennsylvania. That Act did not extend a seller's warranty obligations to persons other than the *immediate buyer.* The Code at § 2–318 extended warranties to the buyer's family and others. (See note 4, supra.)

Another Pennsylvania decision, Silverman v. Samuel Mallinger Co., 375 Pa. 422, 100 A.2d 715 (1953), construed the warranty problem. In that case, the plaintiff, who was in the pickle business, ordered some glass jars from Mallinger. Mallinger upon receiving the plaintiff's order, purchased the jars from an exclusive agent of the manufacturer. The manufacturer shipped the jars directly to the plaintiff, and the sales agent invoiced Mallinger who in turn invoiced the plaintiff. After the jars were used in the plaintiff's business, damage resulted from leakage. The plaintiff sought to recover upon an express warranty running from the exclusive sales agent to Mallinger and thence to the plaintiff. The plaintiff recovered against Mallinger, and the Supreme Court affirmed a judgment n. o. v. for the sales agent of the manufacturer.

The Court rejected the plaintiff's argument that a purchaser from a dealer could recover for a commercial loss from the manufacturer based on a breach of an express warranty. In his opinion, Mr. Justice Chidsey distinguished Mannsz v. Macwhyte, supra, on the ground that the manufacturer in that case intended his representations as to the quality or fitness of the rope for its particular use were to be conveyed by the manufacturer to the dealer's customer (subpurchaser) by its manual. However, he reasoned in Silverman that the manufacturer never made any representations that his jars would be fit for the pickling process of the plaintiff and no proof was shown that the manufacturer had any knowledge of the pickling process.

An extension of the manufacturer's liability for breach of warranty is found in Jarnot v. Ford Motor Co., 191 Pa. Super. 422, 156 A.2d 568 (1959). In that case, the plaintiffs purchased a tractor from a dealer in Ford products. While the tractor was in use on the highway, a defect in the steering mechanism caused the driver to lose control of the vehicle and the right front wheel came off its axle causing the trailer to overturn off the highway. The Superior Court affirmed the judgment against the Ford Motor Company in these words:

" * * * a manufacturer who by means of advertising extols his product, in the effort to persuade the public to buy, may thereby incur liability to a purchaser notwithstanding privity between the purchaser and the manufacturer is wholly lacking. * * *

" * * * A person, who after the purchase of a thing, has been damaged because of its unfitness for the intended purpose may bring an action in assumpsit against the manufacturer based on a breach of implied warranty of fitness; and proof of a contractual relationship or privity between the manufacturer and the purchaser is not necessary to impose liability for the damage." pp. 429, 430, 156 A.2d p. 572.

The Court cited Loch v. Confair, Silverman v. Samuel Mallinger Co., and Mannsz v. Macwhyte Co. in support of this proposition.

■ From the tenor of these cases it appears that the plaintiffs' position is correct. However, privity is not dead in Pennsylvania though the defense has been whittled away in certain situations. In cases involving food, beverages and like goods for human consumption, Pennsylvania has permitted a *subpurchaser* to sue the manufacturer directly in assumpsit for breach of an implied warranty that the food was wholesome and fit to eat. Nock v. Coca Cola Bottling Works of Pittsburgh, 102 Pa.Super. 515, 156 A. 537 (1931); and Catani v. Swift & Co., 251 Pa. 52, 95 A. 931, L.R.A.1917B, 1272 (1915).

The recent case of Hochgertel v. Canada Dry Corp., 409 Pa. 610, 187 A.2d 575 (1963), injected new life into the privity defense. In that assumpsit action for breach of an implied warranty, an employee of the purchaser of an exploding bottle of carbonated soda water sought to recover damages from the defendant bottler for his injuries. He sought to recover under § 2–318 of the Code (supra, note 4). The Supreme Court affirmed a judgment for the defendant and stated at p. 615, 187 A.2d at p. 578:

> "In no case in Pennsylvania has recovery against the manufacturer for breach of an implied warranty been extended beyond a *purchaser* in the distributive chain. In fact, the inescapable conclusion from Loch v. Confair, 361 Pa. 158, 63 A.2d 24 (1949), is that no warranty will be implied in favor of one who is not in the category of a purchaser."

The Court further concluded that an "employee" did not fit into the category of a beneficiary under § 2–318. Also, the Court distinguished between implied and express warranties as follows, 409 Pa. at p. 616, 187 A.2d at p. 578:

> "Further, in express warranties the purchaser or subpurchaser can rely thereon, for they are considered a part of the consideration for the purchase and are meant to be relied upon by the purchaser. See, Silverman v. Samuel Mallinger Co., 375 Pa. 422, 100 A.2d 715 (1953). So also, the basis for recovery upon an implied warranty, absent a specific statutory exception such as contained in the Uniform Commercial Code, must be that the implied warranty forms a part of the consideration for the contract, and flows from manufacturer to subpurchaser through the conduit of a contractual chain."

■ In the instant case, the plaintiffs at this stage of the action have not shown whether the warranty is implied or express. At the trial, they may well be able to prove. that the manufacturer either by means of national advertising,[5] labels, manuals,[6] or legend upon the container [7] intended either an express or implied warranty to flow through the "conduit of the contractual chain" [8] to the sub-purchaser and his family under § 2–318.

■ We cannot say in the present posture of the case that lack of privity is not a valid defense under Pennsylvania law. The defendant does not interpose the lack of privity defense to the negligence claim of the plaintiffs, because the law of Pennsylvania is otherwise. Foley v. Pittsburgh Des Moines Co., 363 Pa. 1, 68 A.2d 517 (1949).

### ORDER

And now, this 16th day of April, 1963, the plaintiffs' motion to amend is granted, but the plaintiffs' motion to strike the defense of no privity is denied.

5. Jarnot v. Ford Motor Co., supra.

6. Mannsz v. Macwhyte, supra.

7. Silverman v. Samuel Mallinger Co., supra.

8. Hochgertel v. Canada Dry Corp., supra.