**ATLAS ALUMINUM CORPORATION**

v.

**BORDEN CHEMICAL CORPORATION.**

**Civ. A. No. 31422.**

United States District Court
E. D. Pennsylvania.
July 30, 1964.

**54**

Freedman, Landy & Lorry, Philadelphia, Pa., for plaintiff.

Fox, Rothschild, O'Brien & Frankel, Philadelphia, Pa., for defendant.

HIGGINBOTHAM, District Judge.

Since Justice Cardozo's classic opinion in MacPherson v. Buick Motor Company, 217 N.Y. 382, 111 N.E. 1050, L.R.A. 1916F, 696 (1916), the walls of the "privity" [1] defense have crumbled in most jurisdictions as to causes of action involving personal injuries or death claims.[2] Thus, in such jurisdictions a manufacturer may be held liable in personal injury or death claims to a subpurchaser who has not dealt directly with the manufacturer. Under Pennsylvania substantive law,[3] this case raises precisely the issue as to whether a manufacturer can be liable to a subpurchaser on the theory of *implied warranty* when the two following conditions have occurred:

(1) The only damages sustained are property damages or related commercial losses without any personal injury; and

(2) There have been no representations, advertisements, or express warranties from the manufacturer to the subpurchaser.

While I am mindful of the steady erosion of the privity prerequisite in many fields and in several jurisdictions, I must nevertheless conclude that under Pennsylvania substantive law the privity

---

1. For a definition of "privity", see 4 Corbin, Contracts § 778 (1951).

2. See generally 2 Harper & James, Torts § 28.1 et seq. (1956). In speaking of MacPherson v. Buick Motor Company, supra, Prosser says: "This decision found immediate acceptance, and at the end of some 40 years is all but universal law in the United States. Massachusetts, which was one of the last jurisdictions to capitulate, has said that 'the MacPherson case caused the exception to swallow the asserted general rule of nonliability, leaving nothing upon which that rule could operate.'" Prosser, Torts § 84 at 500 (2nd ed. 1955). See also Carter v. Yardley & Co., 319 Mass. 92, 64 N.E. 2d 693, 164 A.L.R. 559 (1946); Prosser, "The Assault Upon the Citadel (Strict Liability to the Consumer)," 69 Yale L.J. 1099 (1960); Annot., 75 A.L.R. 2d 39.

3. Paragraphs 1 and 2 of plaintiff's complaint are admitted in defendant's answer, and thus diversity of citizenship jurisdiction is admitted. Whether plaintiff's cause of action is characterized as being in tort and/or contract, the law of Pennsylvania would be applicable because of the sufficiency of its contacts and the operative facts in Pennsylvania. See Klaxon Co. v. Stentor Electric Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); Mannsz v. MacWhyte, 155 F.2d 445 (3rd Cir. 1946); Astrin v. Metropolitan Life Insurance Co., 341 Pa. 120, 17 A.2d 887 (1941); Uniform Commercial Code § 1–05; Restatement, Conflict of Law § 332 et seq. (1934).

defense has not been vanquished where the claim is based on an implied warranty and the damages sustained are solely property damages or commercial losses without personal injury.

### I.

Plaintiff, Atlas Aluminum Corporation, hereinafter referred to as "Atlas", is a Pennsylvania corporation which manufactures, distributes and sells aluminum sash windows and associated lines.

Defendant, Borden Chemical Company, hereinafter referred to as "Borden", is a New Jersey corporation engaged in the manufacture and sale of chemicals, adhesives and other products.

Plaintiff claims that in 1960, for the purpose of glazing aluminum frames and glass to aluminum window frames, it obtained and used two shipments of adhesive manufactured and sold by defendant. Plaintiff alleges that the adhesive failed to hold the glass thereby requiring it to "reglaze thousands of window panes at great expense * * * [and] to curtail its normal fabrication operations", causing considerable loss of business and goodwill amounting to damages of $100,-000.00.

Defendant's prior motion to dismiss was denied on June 13, 1962, by Judge C. William Kraft, Jr., because of the "novel and possibly intricate questions of law", and thus in the absence of a factual record, Judge Kraft appropriately ruled that it was "advisable that action be deferred until all the facts have been fully developed. Certainly the case is not so clear as to warrant a summary disposition of the issues at this time." Subsequent to Judge Kraft's order, the facts have been fully developed by defendant, taking the depositions of Stanley Freedman, president of Atlas, Jerome Donald Jerome, an engineer for Atlas, and Samuel Wachtel, a supervisor of inventory control for Atlas. There was substantial additional discovery through the Interrogatories and Answers filed by each party. As a result of the pretrial discovery, and the present uncontradicted factual posture of the case, defendant has filed a motion for summary judgment to dismiss on the grounds that defendant is entitled to judgment as a matter of law since there is no genuine issue as to any material fact. Defendant states this motion is based upon:

"(a) As to plaintiff's *averment of negligence:* the complaint which clearly indicates that plaintiff is not claiming damages for bodily injury.

"(b) As to plaintiff's *averment of breach of warranty:* the depositions of plaintiff's employees, which clearly indicate a lack of privity of contract between plaintiff and defendant and no representations or advertisements by the defendant relating to the product in question."

In its brief, which is corroborated by the depositions, plaintiff admits that:

"(a) It never entered into any contractual relationship with the defendant concerning the sale of the adhesive product.

"(b) It purchased the adhesive product from a third person.

"(c) It was induced to purchase the adhesive by the recommendations of third persons.

"(d) Its claim is limited to damages for commercial loss and does not involve a claim for bodily harm."

Plaintiff further states that it "does not admit that defendant never made any representations, advertisements or warranties, directly or indirectly, to plaintiff concerning the adhesive."

Though agreeing with plaintiff's admissions (a) through (d), supra, defendant specifically denies that any representations, advertisements or warranties were made to plaintiff concerning the adhesive. Upon my review of the record, I find that defendant never made to plaintiff any representations, advertisements or warranties directly or indirectly as to the adhesive, either prior to the initiation of this litigation, or prior to the purchase or use of the adhesive. In fact the record reveals that the adhesive was shipped by defendant at the instruction and in be-

half of a third company—Methods Research Products Company; that all shipments of adhesive ordered by plaintiff from Methods Research Products Company carried the Methods Research label and product designation (V–821); that sales orders and billings were issued to plaintiff by and in the name of Methods Research Products Company and payment was made directly to Methods Research Products Company by plaintiff; that plaintiff never purchased any adhesive from the defendant nor did it enter into any contract of any nature with the defendant; and that plaintiff was induced to purchase the adhesive product by the statements or recommendations of plaintiff's competitors and Methods Research Products Company.

## II.

### THE IMPLIED WARRANTY CLAIM

Plaintiff makes a frontal attack on the Pennsylvania prerequisite of privity in suits for breach of implied warranties in property damage claims. Plaintiff states that the distinction between personal injury and property damage is arbitrary and that "the shift away from the privity concept, whether personal injury or property damage is involved, is in the interest of justice and reason" and concludes that "the law upon this point is on the move, and Pennsylvania is moving in the forefront." Despite plaintiff's contention for the abolition of privity requirements, the "privity" wall in Pennsylvania still remains uncracked where one relies on implied warranties in property damage claims. Having failed to prove any express warranty or express representation, plaintiff's case is necessarily bottomed on a breach of an implied warranty. Only

recently in Hochgertel v. Canada Dry Corp., 409 Pa. 610, 614–615, 187 A.2d 575, 578 (1963), the Supreme Court of Pennsylvania has spoken authoritatively on its view of Pennsylvania law in this field.

"The general rule in the United States is that the mere resale of a warranted article does not give a subpurchaser the right to sue the manufacturer in assumpsit, on the basis of breach of warranty, for damages incurred by him due to a defect in the quality of the goods. Pennsylvania decisions are in accord with this general proposition. The warranty is personal to the immediate or original buyer, and he alone may avail himself of the benefit thereof. This limitation is based on the rule of privity of contract. See, Williston, Sales, § 244, and 77 C.J.S. Sales § 305.

"However, nearly a third of the American jurisdictions, including Pennsylvania, have broken away from the rule of 'privity of contract' in cases involving food, beverages and like goods for human consumption, and have for various stated reasons permitted a *subpurchaser* to sue the manufacturer directly in assumpsit for breach of an implied warranty that the food was wholesome and fit to eat. See, Prosser, Torts, Ch. 17, § 84 (2d ed. 1955); Nock v. Coca Cola Bot. Wks. of Pgh., 102 Pa.Super. 515, 156 A. 537 (1931); Catani v. Swift & Co., 251 Pa. 52, 95 A. 931, L.R.A.1917B, 1272 (1915)." [4]

Thus, in Hochgertel, supra, the Court was noting that the exceptions to the rule of privity were in cases involving "food,

---

4. Again in April, 1964, the Pennsylvania Supreme Court re-emphasized that the human consumption cases were the exception and not the rule when they stated "in Hochgertel * * * we also recognized that we had abandoned the strict privity requirement in food cases and now permit in such actions the extension of the warranty of merchantability to persons within the distributive chain." Yentzer v. Taylor Wine Company, Inc., 414 Pa. 272, 275, 199 A.2d 463, 464 (1964). See also opinion of Judge Harold K. Wood, in Wilson v. American Chain and Cable Company, 216 F.Supp. 32, 35 (E.D.Pa.1963), involving a personal injury claim against a manufacturer of a rotary lawn mower. Even within the personal injury context, Judge Wood noted: "From the tenor of these cases it appears that * * * privity is not dead in Pennsylvania though the

beverages and like goods for human consumption." The Court did not imply that it envisioned any exceptions or breaking away from the rule of "privity of contract" in instances involving pure property damage or commercial loss when the manufacturer was being sued by a subpurchaser on the basis of an implied warranty. All of the Pennsylvania cases cited by plaintiff where privity was not required involved either personal injuries[5] and/or property damage claims where there were prior express representations, or advertisements.[6]

In Silverman v. Samuel Mallinger, 375 Pa. 422, 428, 100 A.2d 715, 718 (1953), the plaintiff's counsel admitted " * * * the general rule that no recovery for commercial loss may be had by the customer of the dealer against the manufacturer, based upon an express or implied warranty from the manufacturer to the dealer, but asserts that this rule is no longer sancrosanct and cites many cases claimed to have departed therefrom." In a careful review of the authorities, the Pennsylvania Supreme Court refused to discard the prerequisite of privity, but instead the Court noted that those cases of departure from the privity prerequisite were limited in instances to where " * * * the representation of quality or fitness for particular use was conveyed or intended to be conveyed by the manufacturer or original vendor to the dealer's customer (subpurchaser) by catalogue,

defense has been whittled away in certain situations. In cases involving food, beverages and like goods for human consumption, Pennsylvania has permitted a subpurchaser to sue the manufacturer directly in assumpsit for the breach of an implied warranty that the food was wholesome and fit to eat," and Judge Wood concluded in this personal injury case that "[w]e cannot say in the present posture of the case that lack of privity is not a valid defense [on the breach of warranty action] under Pennsylvania law." (216 F.Supp. at 35.) in their detailed annotation as to whether privity of contract is required for "recovery in action based on theory other than negligence, against manufacturer or seller of product alleged to have caused injury," (75 A.L.R.2d 39, 53 n. 18), the editors conclude that: "Consideration of the pertinent Pennsylvania decisions as a whole requires that this jurisdiction be listed among those in which privity is a requirement for recovery on the ground of breach of warranty, notwithstanding that, as noted above, there are contrary statements to be found in relatively recent decisions of courts other than the highest Pennsylvania state court." See also Prosser, "The Assault Upon the Citadel (Strict Liability to the Consumer)," 69 Yale L.J. 1099, 1113 (1960); 22 U.Pitt.L.R. 203–08 (1960).

5. See e. g., Catani v. Swift & Company, 251 Pa. 52, 95 A. 931 (1915) (diseased meat causing the death of plaintiff-husband); Nock v. Coca-Cola, 102 Pa.Super. 515, 156 A. 537 (1931) (consumption of beverage which had a worm in it); Sicrocinski v. Du Pont De Nemours &

Co., 27 F.Supp. 706 (E.D.Pa.1949), aff'd., 118 F.2d 531 (3rd Cir. 1941) (dynamite cap causing serious personal injuries).

6. Thompson v. Reedman, 199 F.Supp. 120 (E.D.Pa.1961), Opinion of Judge John W. Lord, Jr., involving personal injuries of plaintiff who was a passenger in a car purchased from defendant, Reedman, who in turn had purchased it from General Motors. See also Magee v. General Motors Corp., 117 F.Supp. 101 (W.D. Pa.1953), vacated and remanded in 213 F.2d 899 (3rd Cir. 1954), 124 F.Supp. 606 (W.D.Pa.1954), aff'd on rehearing, aff'd per curiam in 220 F.2d 270 (3rd Cir. 1955). (Personal and injuries.) Some of the cases involved both personal injuries *and* express warranties or direct representations. Cf. Mannsz v. MacWhyte, 155 F.2d 445 (3rd Cir. 1946), while others involved property damages only, such as Jarnot v. Ford Motor Co., 191 Pa.Super. 422, 429–430, 156 A.2d 568, 572 (1959), where the Court noted: "Moreover, a manufacturer *who by means of advertising extols his product, in the effort to persuade the public to buy*, may thereby incur liability to a purchaser notwithstanding privity between the purchaser and the manufacturer as wholly lacking." (Emphasis added.) See also Knapp v. Willys Ardmore, Inc., 174 Pa.Super. 90, 93, 100 A. 2d 105, 107 (1953), where the Court noted that plaintiffs " * * * were also taken for a ride in a similar car, used by defendant as a demonstrator and were given sales literature containing photographs and specifications and technical details of various features of the car which it was alleged made for superior performance over other station wagons."

manual, tags affixed to shipment, legend upon container, or by negotiation with the subpurchaser."

While in Mannsz v. MacWhyte, 155 F. 2d 445 (3rd Cir. 1946), there was general language noting that the requirement of privity had been obliterated from Pennsylvania law, the Supreme Court of Pennsylvania, in a subsequent case involving commercial loss, distinguished or limited the Mannsz case on the ground that "there were *representations* in the defendant wire rope manufacturers' *manual* which was widely disseminated to buyers. and prospective buyers. The words and figures in the manual were representations as to the tensile strength of the wire rope and the purposes for which it was manufactured." Silverman v. Samuel Mallinger, 375 Pa. 422, 428, 100 A.2d 715, 718 (1953). Mannsz is further distinguishable by the fact that the Court was referring to personal injuries and death claims rather than commercial loss or property damage.

■■ Plaintiff's view that reason and logic preclude a distinction in the treatment of personal injury and property damage claims has ample professional support.[7] However, my role as a District Court Judge sitting in a case of diversity of citizenship is to anticipate what the highest state court decision would be under similar facts.[8] Although the winds of the future indicate that the Pennsylvania Supreme Court will someday alter its course on privity in favor of the view now urged by plaintiff, I must nevertheless conclude from the analysis of the foregoing cases that the highest Court of Pennsylvania would not *at this time* modify the privity doctrine to permit a cause of action on the implied warranty theory. The words of Judge Learned Hand are particularly apt when he stated: "Nor is it desirable for a lower court to embrace the exhilarating opportunity of anticipating a doctrine which may be in the womb of time, but whose birth is. distant."[9]

## III.

## THE NEGLIGENCE CLAIM

■ Plaintiff's cause of action is also based on a claim of negligence. In Foley v. Pittsburgh DeMoines Co., 363 Pa. 1,. 68 A.2d 517, 531 (1949), the Pennsylvania Supreme Court noted its prior adoption of MacPherson v. Buick, supra, which dispensed with the necessity of privity in certain types of negligence cases. Unlike defendant's citation of controlling authorities on the implied warranty issue, see Silverman v. Samuel Mallinger, 375 Pa. 422, 428, 100 A.2d 715,. 718 (1953), there was no citation of any case involving property damage where a Pennsylvania court has held that in negligence cases the MacPherson doctrine would be limited to personal injury matters. Accordingly, in the absence of contrary authority, I will not hold at this. stage of the proceedings that there could not be a cause of action in negligence.

■ The authorities seem contrary to defendant's contention. As Dean Prosser has observed, the liability of suppliers to third persons under the MacPherson doctrine " * * * has been extended to damage to property, and it is now gen-

---

7. See e.g., Prosser, "Strict Liability to the Consumer," 69 Yale L.J. 1099, 1143 (1960) which states:

"All but a few of the cases have involved personal injury * * *. Damage to property has been slow to appear, for the obvious reasons that nearly all of the products thus far involved have been those intended for bodily use. There is no sensible reason for distinguishing between the two kinds of damage; and the question would appear to be rather one of choosing the products to be covered by the strict liability."

8. "In sum, it is incumbent on us to make our own determination of what the Pennsylvania Supreme Court would probably rule in a similar case." Gullborg v. Rizzo, 331 F.2d 557, 558 (3rd Cir., April 14,. 1964). See also Gerr v. Emrick, 283 F. 2d 293, 294 (3rd Cir. 1960), cert. den. Pennsylvania Turnpike Commission v. Gerr, 365 U.S. 817, 81 S.Ct. 698, 5 L.Ed. 2d 695 (1961).

9. Spector Motor Service v. Walsh, 139 F. 2d 809, 823 (1944), vacated 323 U.S. 101, 65 S.Ct. 152, 89 L.Ed. 101 (1944).

erally agreed that the manufacturer is responsible for negligence in the sale of goods * * * which involve no recognizable risk of personal injury and are foreseeably dangerous only to property." Prosser, Torts § 84 at 501–02 (2nd ed. 1955). See also E. I. Du Pont De Nemours & Co. v. Baridon, 73 F.2d 26, 29 (8th Cir. 1934), for its citation of cases which " * * * support the view that substantially the same rule applies to sales of dangerous products whether intended to affect human life or to affect property." [10] Thus as to the negligence claim, it appears that the appropriate way to handle a motion for summary judgment where the claims are based on both negligence and breach of warranty would be as Judge Freedman disposed of a related matter in Driver v. F. A. Mitchell Co. et al., D.C., 35 F.R.D. 226, Opinion, May 18, 1964. In that opinion, Judge Freedman, now of the Court of Appeals for the Third Circuit, noted:

> "Defendant's motion, however, encounters a procedural barrier. The Federal Rules of Civil Procedure do not provide for a 'partial summary judgment' under Rule 56. Since the elimination of the warranty count will not completely dispose of the case, the appropriate remedy is provided by subsection (d) of Rule 56, which authorizes an order limiting the issues to be tried, by analogy to Rule 16 relating to pre-trial orders. Professor Moore recommends that this should be called an 'interlocutory summary adjudication'. 6 Moore, Federal Practice (1953), § 56.20[3]. Such an adjudication preliminary to the trial is not a final judgment, and has the virtue that if

subsequent developments in this changing area of Pennsylvania law make it appropriate, the conclusion here reached may be reconsidered at the pretrial conference or at the trial." [11]

### ORDER

And now, July 30, 1964, plaintiff's complaint is declared insufficient as a matter of law on the issue of liability for warranty and that issue is eliminated from the case, but defendant's motion for summary judgment is hereby denied.

10. See Frumer, Products Liability, § 5.03 [1], p. 21; when speaking of manufacturer's negligence and MacPherson v. Buick, supra, it is noted: "No distinction has been made in applying the modern view between property damage and personal injury." See also Todd Shipyards Corp. v. United States, 69 F.Supp. 609, 610 (D.Me.1947), "How can a general principle authorizing recovery of damages for the negligent act of another permit

a man to recover for a sprained ankle and not for the destruction of his house?"

11. Judge Freedman cited the following authorities: Coffman v. Federal Laboratories, 171 F.2d 94 (3rd Cir. 1948), cert. den. 336 U.S. 913, 69 S.Ct. 603, 93 L.Ed. 1076 (1949); Daniels v. Beryllium Corp., 211 F.Supp. 452, 456 (E.D.Pa.1962); 6 Moore, Federal Practice, § 56.20 (1953).