# Klages *v.* General Ordnance Equipment Corporation, Appellant.

358

Argued November 20, 1975.  Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Charles J. Duffy, Jr.,* with him *Lancaster, Mentzer, Coyne and Duffy,* for appellant.

*Peter J. Mansmann,* with him *Allan E. MacLeod, Thomas F. Weis,* and *Mansmann, Beggy & Campbell,* and *Weis & Weis,* for appellee.

OPINION BY HOFFMAN, J., April 22, 1976:

The instant case presents a question of first impression in Pennsylvania: Is the Restatement (Second) of Torts, §402B the law of this Commonwealth?

The facts are not in dispute. The appellee, John R. Klages, was employed as a night auditor[1] at Conley's Motel on Route 8, Hampton Township. He worked from eleven o'clock at night until seven o'clock in the morning, five days a week. On March 30, 1968, at approximately one-thirty in the morning, two individuals entered the motel and announced "This is a stickup. Open the safe." The appellee indicated that he was unable to open the safe because he did not know the combination. One of the individuals then pointed a gun at the appellee's head and pulled the trigger. Fortunately for the appellee, the gun was a starter pistol and he was not seriously injured.

The next day Klages and a fellow employee, Bob McVay, decided that they needed something to protect themselves against the possibility of future holdups. After reading an article concerning the effects of mace, McVay suggested that they investigate the possibility of using mace for their protection. McVay secured four leaflets describing certain mace weapons from the Markl Supply Company. The leaflets were distributed to retail outlets by the appellant manufacturer, General Ordnance Equipment Corporation. The literature indicated that three different types of mace weapons were available. Two of the weapons were too large for Klages' and McVay's purposes, but the third, the MK-II, was easily concealable and otherwise appeared to meet their requirements.[2] The literature contained, in pertinent part, the following description of the mace's effectiveness: "Rapidly vaporizes on face of assailant effecting

---

1. Mr. Klages' duties included auditing the accounts of the motel's revenue and caring for occasional guests that registered after eleven o'clock at night.

2. The MK-II mace weapon resembled a thick pen.

*instantaneous incapacitation* .... It will *instantly stop and subdue* entire groups .... *instantly stops assailants in their tracks* .... an attacker is *subdued — instantly*, for a period of 15 to 20 minutes .... Time Magazine stated the Chemical Mace is 'for police the first, if not the final, answer to a nationwide need — a weapon that *disables as effectively* as a gun and yet does no permanent injury' .... The effectiveness is the result of a unique, *incapacitating formulation* (patent pending), projected in a shotgun-like pattern of heavy liquid droplets that, upon contact with the face, cause extreme tearing, and a *stunned*, winded condition, often accompanied by dizziness and apathy." (Emphasis supplied). After reading and discussing the literature with their employer, McVay purchased a MK-II mace weapon from Markl Supply Company.[3]

At approximately 1:40 a.m., on the morning of September 22, 1968, while the appellee was on duty, two unknown individuals entered the motel office and requested a room. After the appellee had placed a registration form in front of one of the men and had turned to secure a room key, the individuals announced a stickup. One of the intruders took out a gun and directed the appellee to open the safe. Klages, planning to use the mace before the intruder used the gun, moved from the counter to the cash register where the mace was kept. Using the cash register as a shield, Klages squirted the mace, hitting the intruder "right beside the nose." Klages immediately ducked below the register, but the intruder followed him down and shot him in the head. The intruders immediately departed and Klages called the police. The bullet wound caused complete loss of sight in the appellee's right eye.

The appellee commenced separate actions in both

---

3. The Markl Supply Company required a letter of authorization from McVay's employer before allowing the purchase. While the employer paid for and McVay actually obtained the weapon, the appellant does not assert that Klages is not a purchaser.

trespass and assumpsit against the Markl Supply Company and the General Ordnance Equipment Corporation. The Markl Supply Company also joined the General Ordnance Corporation as an additional defendant in each of its cases. On October 26, 1973, the cases were consolidated for trial. A jury trial commenced on March 4, 1974, and the jury returned a verdict in the amount of $42,000.00, in favor of Klages against the appellant, General Ordnance Equipment Corporation, and a verdict in favor of the Markl Supply Company. This appeal followed.

The appellant raises five grounds for reversal: (1) the lower court erred in charging the jury on misrepresentation of a material fact under §402B of the Restatement (Second) of Torts; (2) the lower court erred in charging the jury on breach of express warranty under §2-313 of the Uniform Commercial Code, 12A P.S. §1 et seq.;[4] (3) the lower court erred in refusing to charge the jury on the defense of assumption of the risk; (4) the lower court erred in charging the jury on proximate and legal cause; (5) the lower court erred in charging the jury that if they found the retailer, Markl Supply Company, liable, they must also find the manufacturer, General Ordnance Equipment Corporation, liable to the seller.

## I. SECTION 402B OF THE RESTATEMENT (SECOND) OF TORTS[4a]

Section 402B of the Restatement (Second) of Torts

---

4. Act of April 6, 1953, P.L. 3, §2-313, eff. July 1, 1954. Reenacted Oct. 2, 1959, P.L. 1023, §2, eff. Jan. 1, 1960; 12A P.S. §2-313.

4a. The lower court instructed the jury on two alternate theories of recovery: a material misrepresentation of fact under §402B of the Restatement (Second) of Torts and a breach of express warranty under §2-313 of the Uniform Commercial Code. While we could affirm on the basis of the warranty theory, see discussion infra, the appellant contends that it is *per se* reversible error to charge the jury on the alternate theory of §402B of the Restatement (Second) of Torts. We must determine, therefore, if §402B represents the law of this Commonwealth.

provides as follows: "One engaged in the business of selling chattels who, by advertising, labels, or otherwise, makes to the public a misrepresentation of a material fact concerning the character or quality of a chattel sold by him is subject to liability for physical harm to a consumer of the chattel caused by justifiable reliance upon the misrepresentation, even though (a) it is not made fraudulently or negligently, and (b) the consumer has not bought the chattel from or entered into any contractual relation with the seller."

The courts of this Commonwealth have dealt sparingly with §402B. In *Berkebile v. Brantley Helicopter Corporation*, 462 Pa. 95, 337 A.2d 893 (1975),[5] our Supreme Court did not decide whether §402B is the law of Pennsylvania, because the advertisements amounted only to "puffing" and, therefore, were not within the proscription of §402B. We must determine, therefore, if §402B represents the law of this Commonwealth.

The concept that manufacturers should be held liable to consumers who purchase their products for express misrepresentations made about the products' safety or quality was originated by the Supreme Court of Washington in *Baxter v. Ford Motor Co.*, 168 Wash. 456, 12 P.2d 409, 88 A.L.R. 521 (1932), on second appeal, 179 Wash. 123, 35 P.2d 1090 (1934). In *Baxter*, the plaintiff, relying on representations in the manufacturer's sales literature that all new Fords had "shatter-proof glass windshields," purchased a new Ford from a retail dealer. While the plaintiff was driving, a pebble struck the windshield and shattered the glass, causing blindness to one of the plaintiff's eyes. Initially, the Supreme Court of Washington held that the plaintiff had a right to rely on the manufacturer's representations on the theory of

---

5. The lead opinion expresses the views of Chief Justice JONES and Justice NIX. Justices EAGEN, O'BRIEN and MANDERINO concurred in the result without opinion. Justices ROBERTS and POMEROY filed concurring opinions.

breach of express warranty. On second appeal, however, the court relied on the concept of misrepresentation, holding that if the plaintiff relied on the misrepresentation, the fact that the manufacturer did not know that the representations were false was immaterial.

Prior to *Baxter v. Ford Motor Co.*, supra, a consumer did not have a direct cause of action in tort against the manufacturer for the failure of the product to conform to the manufacturer's representations. The sole cognizable claim, therefore, was for breach of the express warranty created by the manufacturer's representations. This cause of action, however, was uniformly dismissed because the manufacturer and the consumer were not in privity of contract. Thus the consumer was left with direct rights only against his immediate seller.

Because of modern merchandising techniques, however, several courts determined that the consumer should be allowed to sue the manufacturer directly: "The world of merchandising is, in brief, no longer a world of direct contract; it is, rather, a world of advertising, and, when representations expressed and disseminated in the mass communications media and on labels (attached to the goods themselves) prove false and the user or consumer is damaged by reason of his reliance on those representations, it is difficult to justify the manufacturer's denial of liability on the sole ground of absence of technical privity. Manufacturers make extensive use of newspapers, periodicals and other media to call attention, in glowing terms, to the qualities and virtues of their products, and this advertising is directed at the ultimate consumer or at some manufacturer or supplier who is not in privity with them. Equally sanguine representations on packages and labels frequently accompany the article throughout its journey to the ultimate consumer and, as intended, are relied upon by remote purchasers. Under these circumstances, it is highly unrealistic to limit a purchaser's protection to warranties made directly to him by his immediate seller.

The protection he really needs is against the manufacturer whose published representations caused him to make the purchase ..." *Randy Knitwear, Inc. v. American Cyanamid Company*, 181 N.E.2d 399, 402 (N.Y. 1962). (Footnotes omitted).

Furthermore, many manufactured products are shipped in sealed containers by the manufacturer and the retailer is, in effect, merely an outlet or conduit through which the manufacturer distributes his goods. The manufacturer unquestionably intends and expects that consumers will purchase and use his product in reliance upon the express assurances of quality contained in advertisements. There is no sound policy reason to deny the consumer who purchases the product on the strength of a manufacturer's advertisements direct recovery for his loss when the product fails to conform to the representations. Thus, a direct right in tort against the manufacturer was created. See e.g., *Randy Knitwear, Inc. v. American Cyanamid Company*, supra; *Rogers v. Toni Home Permanent Co.*, 147 N.E. 2d 612 (Ohio 1958).

We find that the rationale underlying the creation of a separate, direct cause of action in tort against the manufacturer persuasive. Further, our Supreme Court adopted similar reasoning in a series of cases[6] dealing with privity of contract requirements in breach of warranty cases.[7] In *Kassab v. Central Soya*, 432 Pa. 217,

---

6. On June 24, 1966, our Supreme Court, in *Webb v. Zurn*, 422 Pa. 424, 220 A.2d 853 (1966), adopted §402A of the Restatement (Second) of Torts. That same day, traditional privity of contract requirements in breach of warranty actions were reaffirmed in *Miller v. Preitz*, 422 Pa. 383, 221 A.2d 320 (1966). Two years later, however, our Supreme Court in *Kassab v. Central Soya*, 432 Pa. 217, 246 A.2d 848 (1968), abrogated vertical privity in breach of warranty actions. Finally, in *Salvador v. Atlantic Steel Boiler Co.*, 457 Pa. 24, 319 A.2d 903 (1974), traditional horizontal privity requirements in breach of warranty actions were eliminated.

7. The history of breach of warranty actions demonstrates the close ties between contract and tort actions: "The action by the buyer of goods against his seller for breach of warranty is a freak hybrid, 'born

227-228, 246 A.2d 848, 853 (1968), our Supreme Court stated: "Courts and scholars alike have recognized that the typical consumer does not deal at arms length with the party whose product he buys. Rather, he buys from a retail merchant who is usually little more than an economic conduit. It is not the merchant who has defectively manufactured the product. Nor is it usually the merchant who advertises the product on such a large scale as to attract customers. We have in our society literally scores of large, financially responsible manufacturers who place their wares in the stream of commerce not only with the realization, but with the avowed purpose, that these goods will find their way into the hands of the consumer. Only the consumer will use the products; and only the consumer will be injured by them should they prove defective. Yet the law in Pennsylvania continued to permit these manufacturers to escape contractual liability for harm caused consumers by defective merchandise simply because the manufacturer

---

of the illicit intercourse of tort and contract,' and partaking the characteristics of both. Originally the action was in tort, upon the case for breach of an assumed duty, and the wrong was conceived to be a form of misrepresentation, in the nature of deceit, and not at all clearly distinguished from it. Ames, History of Assumpsit (1888), 2 Harv. L.Rev. 1, 8. In the latter part of the seventeenth century, decisions such as Cross v. Gardiner (1689) 1 Show. K.B. 68, 89 Eng. Rep. 453, and Medina v. Stoughton (1700) 1 Ld. Raym. 593, 91 Eng. Rep. 1297, established the fact that the tort action would lie for a mere affirmation of fact ('express warranty') made without knowledge of its falsity or negligence. As a result warranty became a form of strict liability in tort.

In Stuart v. Wilkins (1778), 1 Coug. 18, 99 Eng. Rep. 15, it was first held that assumpsit would lie for breach of an express warranty as part of a contract of sale. After that decision, and over a period of more than a century, warranties gradually came to be regarded as express or implied terms of a contract of sale, and the action on the contract became the usual remedy for any breach." Prosser and Wade, *Torts*, 692 (5th ed. 1971). See also *Salvador v. Atlantic Steel Boiler Co.*, 457 Pa. 24, 25 n.1, 319 A.2d 903, 904 n.1 (1974).

technically did not sell directly to the consumer. There was no privity of contract between them. No one denied the existence of absolute liability under the code for breach of implied warranty. But this warranty ran not to the injured party, but rather to the middleman who merely sold to the injured party, thus ignoring commercial reality and encouraging multiplicity of litigation." (Emphasis in original omitted). Similarly, in *Salvador v. Atlantic Steel Boiler Co.*, 457 Pa. 24, 32, 319 A.2d 903, 907 (1974), our Supreme Court stated: "Our Courts have determined that a manufacturer by marketing and advertising his products impliedly represents that it is safe for its intended use. We have decided that no current societal interest is served by permitting the manufacturer to place a defective article in the stream of commerce and then to avoid responsibility for damages caused by the defect."

In *Kassab v. Central Soya*, supra, the Court reiterated the policy reasons underlying the imposition of strict liability in tort: the manufacturer by marketing and advertising the product impliedly represents that it is safe for its intended use, the inability of the consumer to protect himself against defectively manufactured goods, the superior risk bearing ability of the manufacturer, the lack of a sound basis in public policy to allow the manufacturer to avoid responsibility, and the avoidance of multiplicity of actions by permitting a direct action against the manufacturer. Cf. *Salvador v. Atlantic Steel Co.*, supra at 33 n.15, 319 A.2d at 908 n.15.

Finally, the elimination of privity of contract in breach of warranty actions has also negated a compelling argument against the adoption of §402B. The Court in *Kassab v. Central Soya*, supra, noted that liability without fault is imposed in breach of warranty actions. When privity of contract prevented direct suits by a consumer against the manufacturer for breach of warranty, the consumer had to prove some degree of fault (e.g., negligence) in order to recover against the

manufacturer. Because §402B would give the consumer a direct action against the manufacturer, it might be argued that §402B should not be adopted because it would eliminate the requirement of proving fault. The defense of lack of privity, however, has been eliminated by *Kassab v. Central Soya*, supra, and *Salvador v. Atlantic Steel Boiler Co.*, supra. A manufacturer, therefore, is presently subject to liability without fault in contract, and, therefore, the adoption of §402B would not change the plaintiff's present burden of proof in this regard.

Thus, we find that the pronouncements of our Supreme Court in *Kassab* and *Salvador*, together with the rationale of *Randy Knitwear*, conclusively mandate the adoption of §402B of the Restatement (Second) of Torts as the law of this Commonwealth.[8] In so doing, we note the extensive similarity between §2-313 of the Uniform Commercial Code, supra, and §402B. Specifically, §2-313 provides that a seller creates express warranties by "[a]ny affirmation of fact or promise" or by "[a]ny description of the goods." Section 402B provides that the misrepresentation must be of a "material fact concerning the character or quality" of the product which is contained in an advertisement, label, or otherwise conveyed. Both provisions, therefore, are concerned with the manufacturer's express statement about his product and whether the product in fact conforms to that representation. Once noncompliance is demonstrated, both sections, in effect, impose liability without fault on the manufacturer. Because the elimination of the privity

---

8. Professor Prosser stated that *Baxter v. Ford Motor Company*, supra, has been followed elsewhere, and is now generally accepted law. "The courts, in general, have agreed with the first opinion [in Baxter], and have talked of express warranty; but occasionally, when obstacles have arisen in the way of existing warranty rules, they have reverted to the theory of misrepresentation." Prosser, Law of Torts 651-652 (4th ed. 1971). Professor Prosser then notes that the misrepresentation theory has been adopted by the Second Restatement of Torts in §402B.

requirement allows the buyer to sue the manufacturer directly in assumpsit for noncompliance with his express statements, we see no sound reason for not recognizing a similar cause of action in trespass.

Furthermore, our Supreme Court in *Silverman v. Samuel Mallinger Co.*, 375 Pa. 422, 100 A.2d 715 (1953), addressed an argument embodying the same principles as §402B. In *Silverman*, the appellant's counsel admitted that the prevailing rule at that time required privity for suit for breach of an express warranty between a consumer and a remote manufacturer, but argued that many cases had departed from that standard. Our Supreme Court noted that "in all of these cases the representation of quality or fitness for particular use was conveyed or intended to be conveyed by the manufacturer or original vendor to the dealer's customer (subpurchaser) by catalogue, manual, tags affixed to shipment, legend upon container, or by negotiation with the subpurchaser ... In the foregoing cases there were unqualified statements in writing by the manufacturer which were intended to be conveyed to any subsequent purchaser in order to induce a sale of the product. Upon such express promises or representations the purchaser can rely, for they compose a part of the consideration for the purchase and are meant to be conveyed to and relied upon by the purchaser. This is especially true in this day of unparalleled competitive merchandising." *Silverman v. Samuel Mallinger Co.*, supra at 428-429, 100 A.2d at 718-719. See also *Hochgertel v. Canada Dry Corporation*, 409 Pa. 610, 187 A.2d 575 (1963). Thus, it appears that our Supreme Court has given tacit approval to the principles of §402B as early as 1953.

## II. THE APPLICABILITY OF §402B

A. *Misrepresentation of Material Fact*

Having adopted §402B of the Restatement (Second) of Torts as the law of this Commonwealth, we must determine whether the appellant misrepresented "a

material fact concerning the character or quality of a chattel sold by him ...."

The comments to §402B are helpful in this regard. First, Comment f states that "[t]he fact misrepresented must be a material one, upon which the consumer may be expected to rely in making his purchase ...." Comment g states that section 402B "does not apply to statements of opinion, and in particular it does not apply to the kind of *loose general praise* of wares sold which, on the part of the seller, is considered to be 'sales talk,' and is commonly called 'puffing' — as, for example, a statement that an automobile is the best on the market for the price .... In addition, the fact misrepresented must be a material one, of importance to the normal purchaser by which the ultimate buyer may justifiably be expected to be influenced in buying the chattel." (Emphasis supplied).

The facts and circumstances surrounding the purchase of a product are helpful in determining whether the representation is of a material fact. In this case, the appellant sold a product designed as a tool to deter violence. Its sole anticipated use was to protect the purchaser from harm under extremely dangerous circumstances and the appellee specifically purchased the product with these explicit purposes in mind. Specific representations about the effectiveness of the weapon under such dangerous circumstances are clearly material. The mace weapons were described as effecting an instantaneous, immediate, complete incapacitation of an assailant. This is not "loose, general praise"; rather it is specific data on the capability of a product. This situation is thus distinguishable from *Berkebile v. Brantley Helicopter Corporation*, supra, where the representation that the purchaser was assured of a safe, dependable helicopter was held to be mere "puffing." The lower court, therefore, properly submitted the issue of liability under §402B to the jury.[9]

---

9. Appellant has also contended that the lower court erred by

## B. Justifiable Reliance

Section 402B provides that the manufacturer is liable "for physical harm to a consumer of the chattel caused by *justifiable reliance* upon the misrepresentation ...." (Emphasis supplied). Comment j to §402B states: "The rule here stated applies only where there is justifiable reliance upon the misrepresentation of the seller, and physical harm results because of such reliance, and because of the fact which is misrepresented. It does not apply where the misrepresentation is not known, or there is indifference to it, and it does not influence the purchase or subsequent conduct. At the same time, however, the misrepresentation need not be the sole inducement to purchase, or to use the chattel, and it is sufficient that it has been a substantial factor in that inducement."

The appellant does not directly contend that the appellee did not justifiably rely on its representations when using the mace weapon. Appellant does contend, however, that the appellee voluntarily assumed the risk of confronting an armed intruder with its mace weapon. Appellant argues in effect, therefore, that one could never justifiably rely on its representations under these circumstances. As a result, the appellant contends that the lower court erred in refusing to charge on voluntary assumption of the risk.

Assumption of the risk involves voluntary exposure to

---

submitting to the jury the issue of liability under an express warranty theory. Because we have determined that the representations were descriptions of the capabilities of its product and not mere puffing, the lower court also properly submitted the issue of liability under the theory of an express warranty to the jury. See §2-313(1)(b) of the Uniform Commercial Code, supra.

Appellant's sole argument concerning §2-313 of the Uniform Commercial Code was whether the representations constituted an express warranty as opposed to puffing. Thus, we need not consider whether the other requirements of §2-313 have been complied with in the instant case.

an obvious or known danger. See Comment n, §402B of the Restatement (Second) of Torts; *Pritchard v. Liggett and Myers Tobacco Company*, 350 F.2d 479 (3d Cir. 1965); *Ferraro v. Ford Motor Company*, 423 Pa. 324, 223 A.2d 746 (1966); *Speyer, Inc. v. Goodyear Tire and Rubber Company*, 222 Pa. Superior Ct. 261, 295 A.2d 143 (1972). While §402A of the Restatement (Second) of Torts provides that assumption of the risk is a bar to recovery, §402B has no similar provision. This omission, however, is consistent with the purpose of §402B. Section 402B covers a manufacturer's express representations as to performance of a product when properly used. The manufacturer is liable to a "consumer" who is harmed when he justifiably relies on the manufacturer's representations. Comment i to §402B defines a "consumer" as "... one who makes use of the chattel in the manner in which a purchaser may be expected to use it." Where, as here, the product marketed is explicitly designed for use in dangerous situations when harm is imminent, the manufacturer cannot assert that the purchaser assumed the risk of harm by confronting the danger and using the product as the manufacturer intended and expected. In the instant case, the appellee used the weapon as the appellant fully intended and expected: to ward off assailants. The appellant cannot now assert that the appellee assumed the risk of injury; rather, it appears that the appellant has assumed the risk that his product would not function as represented.[10] Furthermore, the lower court fully charged the jury regarding justifiable reliance, and that instruction encompassed appellant's claim of assumption of the risk.

## III. PROXIMATE CAUSE

Appellant contends that the lower court erred in

---

10. This rationale applies with equal force to express warranties created under §2-313 of the Uniform Commercial Code.

submitting the issue of proximate cause to the jury. Specifically, the appellant argues that the intruder's criminal conduct was an intervening, superseding act which was the sole cause of appellee's injuries.[11]

Section 402B of the Restatement (Second) of Torts provides that a manufacturer is liable "for physical harm *caused* to a consumer of the chattel caused by justifiable reliance upon this misrepresentation ...." (Emphasis supplied). Section 2-715(2)(b) of the Uniform Commercial Code, supra, provides for recovery of "injury to person or property *proximately* resulting from any breach of warranty." Thus the appellee had the burden of proving that his injury was proximately caused by the mace weapon's failure to conform to appellant's representations.

Proximate cause is designed not only to allow recovery for damages incurred because of another's act, but also to define such limits on recovery as are economically and socially desirable. See *Whitner v. Lojeski*, 437 Pa. 448, 263 A.2d 889 (1970). It requires a showing of more than "but for" causation in fact; it requires that the conduct in issue also be a "substantial factor" in bringing about the harm. See *Whitner v. Lojeski*, supra; *Noon v. Knavel*, 234 Pa. Superior Ct. 198, 339 A.2d 545 (1975); *Wisniewski v. The Great Atlantic and Pacific Tea Company*, 226 Pa. Superior Ct. 574, 323 A.2d 744 (1974); Restatement (Second) of Torts, §431.

A superseding cause is an act of a third party or

---

11. The appellee testified at trial that the intruder did not have a clear shot at him when he squirted the intruder with the mace. The appellee further testified that as soon as he squirted the intruder, he ducked behind the cash register. The intruder then changed his position, followed the appellee down to the floor, and shot him. The intruder apparently left the motel without any trouble. The appellant does not contend that the appellee would have been shot even if the mace weapon disabled the intruder. If the appellee would have been shot despite the mace's disabling effect, there would be no "but for" causation. See §432(1) of the Restatement (Second) of Torts.

other force which, by its intervention, prevents the actor from being liable for harm to another caused by his antecedent conduct. See §440, Restatement (Second) of Torts. Appellant argues, in effect, that the *sole cause* of the injury was the intentional, criminal act of the intruder.

In the instant case, however, the appellant manufactured a product designed for use in situations involving criminal attacks. The appellant clearly recognized, or should have recognized, the possibility of harm resulting to a purchaser if this weapon did not perform as represented. While the intervening criminal act of a third party can satisfy the requirements of a superseding cause, it does not do so where the criminal act is reasonably foreseeable.[12] See §448, Restatement (Second) of Torts, Prosser, Law of Torts, §51 (3d ed. 1964). Had the mace weapon in the instant case immediately, instantaneously, and completely disabled the assailant, the appellee would not have been shot. Failure of the weapon to conform to the appellant's representations is not only a "factual" cause, but is also a "substantial" cause of the appellee's injuries. Here, the issue of proximate cause was submitted to the jury in a clear, comprehensive charge. The lower court acted properly in submitting the issue to the jury. See *Miller v. Checker Yellow Cab Company of Bethlehem, Inc.*, 465 Pa. 82, 348 A.2d 128 (1975).

## IV. JURY INSTRUCTION

Appellant last contends that the lower court erred by instructing the jury as follows: "In the contract action, if

---

12. Because we have determined that the criminal conduct in the instant case was not a superseding cause, we need not reach the issue of whether the existence of a superseding, intervening cause precludes recovery under §402B of the Restatement (Second) of Torts.

you find against the Markl Supply Company, the seller of the product, the Court is directing you that they are entitled to a verdict over against the General Ordnance Company, the manufacturer of the product."

The appellant distributed the four leaflets containing representations about his product to retail dealers including the Markl Supply Company. Because there is no evidence that Markl made further representations pertaining to the product's capabilities, the sole express warranty was embodied in the leaflets. The leaflets not only created rights in the ultimate purchaser, but they also created rights in the retail seller.

Under old privity doctrines, the consumer could sue only his immediate seller. If the seller was found liable, he could then separately sue the manufacturer on the latter's express warranty to him. In *Kassab v. Central Soya, supra,* our Supreme Court eliminated traditional privity theory in warranty actions, thereby enabling the consumer to sue the manufacturer directly. One of the policy reasons advanced by the Court for this change was the elimination of the duplicitous litigation which resulted from the privity requirement. Thus, it was envisioned that the consumer would sue both the manufacturer and the retailer simultaneously. It follows that when the retailer does not give the consumer a separate and independent express warranty, and when the manufacturer gives an identical express warranty to both the retailer and consumer, the liability of the manufacturer and the retailer is identical. If the consumer is successful in asserting breach of express warranty against the retailer, therefore, the retailer would likewise be successful against the manufacturer. In such cases, an instruction as to "liability over" is proper.

In the instant case, Markl joined the appellant as an additional defendant; the express warranty given by the appellant to both Markl and the appellee was identical; and Markl did not advance separate and independent

express warranties. If the appellee was successful against Markl, then Markl would be successful against the appellant. The lower court, therefore, properly instructed the jury as to "liability over."

Judgment affirmed.