Corinthian Marble & Granite Inc. v. TD Bank N.A.

*Francis Malofiy*, for plaintiff.

*Seth A. Goldberg, Alexander D. Bono, Ryan E. Borneman* and *Harry M. Byrne*, for defendant.

DEMBE, *J.*, Oct. 27, 2014—This is a breach of contract action instituted by plaintiff Corinthian Marble & Granite, Inc. ("Corinthian") against defendant TD Bank, N.A. ("Bank"). Corinthian was a marble and granite company. On January 28, 2008, Corinthian opened a business checking account no. ----7363 at the Bank ("the first account") with three authorized signatories, Nicholas Evangelopoulos, Sophoklis D. Evangelopoulos and Anastasios Papadopoulos ("Tasos").[1] This account is not

---

1. Bank's motion for summary judgment par. 3. Corinthian's

in dispute.[2]

On April 17, 2008, Corinthian closed account----7363 and opened another business checking account with the Bank bearing account number ----4674 ("the second account"). This second account was also set up with three authorized signatures which differed from the first account; the signatories were, Sophoklis D. Evangelopoulos, Theofilos Kamberidis and Tasos.[3] In August 2008, Corinthian removed Sophoklis D. Evangelopoulos as an authorized signor from the second account; the remaining authorized signors on the second account were Theofilos Kamberidis and Tasos.[4]

On March 21, 2009, Kamberidis resigned all relationships with Corinthian. Corinthian never informed the Bank of Kamberidis' resignation. On March 28, 2009, Kosmos C. Fotiadis and Erietta Fotiadis presented to the Bank for the purpose of closing the second Corinthian account bearing account number ----4674 and opening a third business checking account bearing account number ----4216. The third account ----4216 was titled in Corinthian Marble & Granite, Inc.'s name and the authorized signatories for the account were identified as Kosmas C. Fotiadis ("Kosmas")[5], business manager and Erietta Fotiadis ("Erietta"), office manager. Account ----4216 was opened by Bank employee Melissa C. Boyd

---

response to bank's motion for summary judgment p. 3.

2. Bank's motion for summary judgment par. 4. Corinthian's response to bank's motion for summary judgment p. 4.

3. Bank's motion for summary judgment par. 5-6. Corinthian's response to bank's motion for summary judgment p. 5-6.

4. Bank's motion for summary judgment par. 8. Corinthian's response to bank's motion for summary judgment p. 8.

5. The Fotiadis' name is misspelled on the signature next to Erietta's name.

with an initial deposit of $9,125.00.

The signature card[6] contains the following language:

> Each of the authorized individual(s) certify that they
> have all required authority to act with respect to this
> account(s) and, jointly and severally, agree to indemnify
> and hold "Bank" harmless from and against any loss
> or damages arising from each such authority or lack
> thereof. "Bank" has no responsibility or duty to assure
> or verify that authorized individual(s) have or are acting
> within the authority given them by the authorizing
> document or that such authorizing document is genuine
> or valid, even if "Bank" has seen or retained a copy of
> such document.

In addition to signing the signature card, the Fotiadis
presented the Bank with a corporate banking resolution
for deposit accounts. The corporate banking resolution
identified the depositor as Corinthian Marble & Granite,
Inc., a for profit corporation with a principal office
in Malvern, Pennsylvania and bears the signatures of
Kosmas, business manager and Erietta, office manager.
The resolution certifies that pursuant to a meeting of the
Corinthian board of directors on November 1, 2007, a
quorum was present and voting. The resolution resolved
that the Bank was the financial institution for the deposits
of the Corporation's funds which may be withdrawn on
checks, drafts, advices of debit, notes or other orders for
the payment of monies bearing one signature of either
Kosmas or Erietta. The resolution additionally resolved
that the agents were authorized to endorse checks and that

---

6. The signature card is missing two signatures on the required
lines including the line for Corinthian's secretary's name.

the authority conferred upon them shall remain in full force and effect until the written notice of the revocation is delivered to and received by the Bank where the account is maintained. The resolution was not certified to or attested to by the secretary or assistant secretary to Corinthian.[7]

At the time account ----4674 was closed and account number ----4216 was opened, Melissa Boys spoke to Theofilos Kamberidis, a signatory on account number ----4674, who allegedly orally authorized the second account to be closed. Boyd stated she was very familiar with Kamberidis and spoke to him on many occasions.[8]

The Bank deposit agreement contract states the following with respect to business accounts:

> Business Accounts: If the account is not owned by a natural person (a corporation, partnership, limited liability company, sole proprietorship, unincorporated associations, etc.) then the account holder [Corinthian] must provide evidence to our [Bank] satisfaction of the authority of the individuals who sign the signature card to act on behalf of the account holder [Corinthian]. On any transactions involving the account, we may act on the instructions of the person(s) authorized in the resolutions, banking agreement, or certificate of authority to act on behalf of the account holder [Bank].[9]

Sometime after March 2009, a fourth bank account bearing account number -----3547 in Corinthian's name was also opened by the Bank.

---

7. The prior resolutions dated April 17, 2008 and August 8, 2008 bear the signature of the secretary of the Corinthian.

8. The bank was subpoenaed to testify in a preliminary hearing held in Chester County. Boyd testified during the hearing.

9. Deposit agreement p. 10.

On July 21, 2009, Tasos filed a complaint and petition for special injunction against Corinthian, Kosmas C. Fotiadis, Lazaros Hatziestathiou, Theofilos Kamberidis and Haralambos Fotiadis in the court of common pleas in Chester County. Tasos instituted the Chester County action alleging he was removed as manager of Corinthian and was denied access to the business' books and location. His petition sought to restore authority to him over Corinthian's finances, access to the place of business and access to financial records. A hearing on Tasos' petition for injunctive relief was held on August 7, 2009 and September 24, 2009. On October 5, 2009, based on the doctrine of unclean hands and failure to satisfy the element of irreparable harm, the court denied the injunction. Tasos appealed the order. On November 10, 2010, the trial court's order was affirmed.

In February 2010, Tasos filed a two count complaint against the Bank in this court alleging claims for breach of contract and breach of fiduciary duty. On November 2, 2010, the case was dismissed in its entirety. On March 28, 2011, Tasos instituted a shareholder derivative suit against the Bank and Boyd. On December 23, 2011, the suit was dismissed since Tasos failed to satisfy the prerequisites for bringing a shareholder derivative claim. On January 26, 2012, under the same court term and number, a second amended complaint was filed by Corinthian, a new party to the action. Tasos was eliminated as a party. The Bank filed preliminary objections which were sustained on June 13, 2012 dismissing all counts against Boyd and dismissing all counts against the Bank with the exception of breach of contract.

The parties filed cross motions for summary judgment.

On April 8, 2014, the court issued an order and opinion granting the Bank's motion for summary judgment and denying Corinthian's motion for summary judgment. On April 21, 2014, Corinthian filed a motion for reconsideration. On May 7, 2014, the court granted the motion for reconsideration and vacated its order granting summary judgment in favor of the Bank. Presently before the court are the parties' cross motions for summary judgment.

## DISCUSSION

Corinthian alleges that TD Bank breached its contractual duties to it in three separate incidents, first when account number ----4216 was opened and ----4674 was closed; second when ----3547 account was opened, and three when the Bank failed to place a "no hold" on the ----4216 account after the Bank was made aware of the dispute concerning the account. The contracts giving rise to these claims are the signature cards and the Bank's deposit agreement contract. According to Corinthian, the above breaches caused Tasos to be "robbed of the value and control of Corinthian when the defendant, TD Bank, N.A., turned over Corinthian's business account to a third party without authorization, who subsequently raided the company."[10] The damages resulting from the Bank's breaches are allegedly between $6,000,000 and $7,500,000.[11]

A. A question of fact exists as to whether the Bank breached its contract with Corinthian when account ----4674 was closed.

---

10. Plaintiff's expert report of Robert L. Capoferri.
11. *Id.*

Corinthian argues the Bank breached its contract when it closed account ----4674 without proper authorization. In response and in support of its motion for summary judgment, the Bank argues that in fact proper authorization was received to close the account. In support of their respective positions, the parties rely upon conflicting testimonial evidence which places before the court issues of credibility which may not be assessed at this time. Moreover, the signature card for account ----4674 fails to identify the Fotiadis as authorized agents for Corinthian with the requisite authority to close the account. Based on the foregoing, the court finds questions of fact exist as to whether the Bank received proper authorization to close account ----4674. Accordingly, summary judgment is denied.

B. The Bank is not liable for breach of contract in opening accounts ----4216 and ----3547.

Corinthian argues that the Bank breached its contract when it permitted the Fotiadis' to open accounts ----4216 and 3547. The court does not agree. The signature card for account ----4216[12] specifically provides as follows:

Each of the authorized individual(s) certify that they have all required authority to act with respect to this account (s) and, jointly and severally, agree to indemnify and hold *"Bank" harmless from and against any loss or damages arising from each such authority or lack thereof. "Bank" has no responsibility*

---

12. In reviewing the exhibits attached to the motions and responses for summary judgment, the court failed to locate the signature card for account ----3547. The corporate banking resolution however was located. Since the language on signature cards for accounts ----4674 and ----4216 is the same, the court presumes the language on the signature card for account ----3547 is also the same.

*or duty to assure or verify that authorized individual(s) have or are acting within the authority given them by the authorizing document or that such authorizing document is genuine or valid, even if "Bank" has seen or retained a copy of such document.* (emphasis added).

The foregoing language unequivocally and unambiguously removes any responsibility from the Bank to verify the authority of individuals who open accounts on behalf of others. Said language also removes from the Bank all responsibility to investigate the authenticity and validity of corporate banking resolutions, the authorizing documents, presented by Fotiadis to the Bank to open accounts ----4216 and ----3547. Since the Bank did not have any contractual obligation to investigate or verify the authority of the Fotiadis per the signature cards, the Bank may not be held liable for breach of contract. As such, defendant the Bank's motion for summary judgment on this issue is granted.[13]

C. Summary judgment is granted on the claim for breach of contract regarding the "no hold" claim.

Corinthian further argues that the Bank breached its contract when it failed to place a "no hold" on the Corinthian account once defendant was made aware of the breach. In support thereof, Corinthian relies upon a section contained within the Bank's deposit agreement contract which provides "if we [Bank] receive conflicting

---

13. The court further notes bank was not contractually required to investigate ownership disputes. *See* deposit agreement contract p. 10 and 7 P.S. §606 (An institution shall not be required, in the absence of a court order or indemnity required by this section, to recognize any claim to, or any claim of authority to exercise control over, a deposit account... made by a person or persons other than (i) The customer in whose name the account or property is held by the institution."

instructions or a dispute arises as to authorization with regard to handling of the account, you [Corinthian] agree we may place a hold on the account until such conflict or dispute is resolved to our satisfaction....[14] Viewing the facts in the light most favorable to Corinthian, i.e. that Taso informed the Bank about the shareholder dispute, the Bank did not breach any contract with Corinthian. Placing a hold on an account is based on the Bank's discretion as evidenced by the term "may". As such, since the Bank was not obligated to place a hold on the account, the court finds that summary judgment on this particular claim is granted in favor of the Bank and against Corinthian

**D. Corinthian's entitlement to damages, if a breach is proven, is less than $50,000.00 and therefore the case is remanded to arbitration.**

In order to recover damages for a breach of contract, the party alleging the breach must prove: (1) the existence of a contract, (2) a breach of a duty imposed by the contract, and (3) damages.[15] Where one party to a contract breaches the contract, the other party is entitled to recover, unless the contract provided otherwise, whatever damages he suffered, provided (1) they were such as would naturally and ordinarily result from the breach, or (2) they were reasonably foreseeable and within the contemplation of the parties at the time they made the contract, and (3) they can be proved with reasonable certainty.[16]

The purpose of a damage award is to place the non-

---

14. Plaintiff's exhibit N, p. 10.
15. *J.F. Walker Co., Inc. v. Excalibur Oil Group, Inc.*, 792 A.2d 1269 (Pa.Super. 2002).
16. *Ferrer v. Trustees of the University of Pennsylvania*, 573 Pa. 310, 825 A.2d 591, 610 (2002); *Helpin v. Trustees of Univ. of Pennsylvania*, 608 Pa. 45, 50-51, 10 A.3d 267, 270 (2010).

breaching party "as nearly as possible in the same position [it] would have occupied had there been no breach."[17] The measure of damages for breach of contract is compensation for the loss sustained. The aggrieved party can recover nothing more than will compensate him. The preferred remedy is expectation damages, which is the amount of money necessary to put a plaintiff in the position it would have enjoyed but for the defendant's breach.[18] Damages are not recoverable if they are too speculative, vague or contingent and are not recoverable for loss beyond an amount that the evidence permits to be established with reasonable certainty.[19]

The damages sought must be "a proximate consequence of the breach, not merely remote or possible."[20] The element of causation defines the range of socially and economically desirable recovery and requires not only "'but-for' causation in fact" but also "that the conduct be a 'substantial factor' in bringing about the harm."[21]

Here, taking these legal principles into consideration, any damages by Corinthian allegedly caused by the Bank's unauthorized closing of Corinthian account ---- 4674 must be reasonable, foreseeable and causally related the breach alleged. Corinthian argues that as a result of the Bank actions, Tasos was forced out of the business and Corinthian's revenues failed to grow as expected under

17. *Lambert v. Durallium Products Corporation*, 364 Pa. 284, 72 A.2d 66, 67 (1950).

18. *See Ferrer v. Trs. of the Univ. of Pa. supra* at 610.

19. *Spang & Co. v. U.S. Steel Corp.*, 519 Pa. 14, 545 A.2d 861, 866 (1988).

20. *Dairymen's Cooperative Sales Ass'n v. McCreary*, 132 Pa. Super. 524, 528, 1 A.2d 508, 510 (1938).

21. *Klages v. General Ordnance Equip. Co.*, 240 Pa.Super. 356, 373, 367 A.2d 304, 313 (1976).

Tasos business model and Corinthian was forced out of business. This alleged harm is not causally related to the alleged breach by the Bank.

If a determination is made that the Bank in fact breached its contract with Corinthian by closing account ----4674 without authorization, the only harm that is reasonable, foreseeable and causally related to this breach is the loss of funds in account ----4674 at the time the account was closed and possibly the funds used to open account ----4216 on the same date. The Bank's reimbursement of said balances to Corinthian would put Corinthian in the same position it would have been in if the Bank had not closed or opened the accounts. Allowing any other damages, such as loss revenue, failure to implement a business plan and loss business to be assessed against the Bank is unreasonable and speculative.[22] The Bank was not the only financial institution in which Corinthian did business. The Bank is merely an intermediary, a commercial instrumentality used by businesses and individuals to conduct banking activities. Since it appears that the reasonable, foreseeable and causally related damages that could potentially be recovered by Corinthian are less than $50,000.00[23], this matter is remanded to arbitration.[24]

## CONCLUSION

For the reasons set forth above, plaintiff's motion for

---

22. The expert opinion offered by Corinthian does not address the harm suffered by Corinthian by bank's alleged breach of contract but rather specifically address harm suffered by a shareholder frozen out of Corinthian, Tasos, a non party to this action.

23. At the time account ----4674 was closed a negative balance existed and account ----4216 was opened with an initial deposit of $9,125.00.

24. The claim for breach of implied contract is redundant of the claim for breach of express contract and is therefore dismissed.

partial summary judgment is denied. Defendant's motion for summary judgment is granted in part as follows: the claim for breach of implied contract is dismissed; the claim for breach of contract based on "no hold" is dismissed; the claim for breach of contract based on opening accounts ----4216 and 3547 is dismissed; the action is remanded to arbitration since the amount in controversy is less than $50,000 and all other aspects of the motion are denied.

## ORDER

And now, this 27 day of October 2014, upon consideration of plaintiff Corinthian Marble & Granite, Inc.'s motion for summary judgment and defendant TD Bank, N.A.'s Cross motion for summary judgment and all responses in opposition, it hereby is ordered that the motions for summary judgment are granted in part and denied in part as follows:

1. Plaintiff's motion for partial summary judgment is denied.

2. Defendant's motion for summary judgment is granted in part as follows:

a. The claim for breach of implied contract is dismissed.

b. The claim for breach of contract based on "no hold" is dismissed.

c. The claim for breach of contract based on opening accounts ----4216 and ----3547 is dismissed.

d. This action is remanded to arbitration since it appears the amount in controversy is less than $50,000.

e. All other aspects of defendant's motion are denied.