**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3229
_____

JULIE L. HEETER,
Individually and as Administrator of the Estate of Bryan E. Harris, Deceased,

Appellant

v.

HONEYWELL INTERNATIONAL INC, DBA Honeywell Security; ADT LLC;
ADT CORP
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2-16-cv-00557)
District Judge: Honorable Eduardo C. Robreno
_____

Argued: March 27, 2017

Before: AMBRO, VANASKIE, and RESTREPO, <u>Circuit Judges</u>

(Filed:  July 24, 2017)
_____

Lane R. Jubb, Esq.
Dion G. Rassias, Esq.
David A. Yanoff, Esq.  [Argued]
The Beasley Firm
1125 Walnut Street
Philadelphia, PA  19107
        *Counsel for Appellant*

Jeannine L. Lee, Esq. [Argued]
Stinson Leonard Street
150 South Fifth Street
Suite 2300
Minneapolis, MN 55402

James T. Moughan, Esq.
Bennett Bricklin & Saltzburg
1601 Market Street
16th Floor
Philadelphia, PA 19103
        *Counsel for Appellee Honeywell International*

Kerensa Cassis, Esq.
Charles C. Eblen, Esq. [Argued]
Shook Hardy & Bacon
2555 Grand Boulevard
Kansas City, MO 64108

Joanna Vassallo, Esq.
Shook Hardy & Bacon
Two Commerce Square
2001 Market Street, Suite 3000
Philadelphia, PA 19103
        *Counsel for Appellees ADT LLC, ADT Corp.*

_____

OPINION[*]
_____

RESTREPO, *Circuit Judge*

Plaintiff-Appellant Julie Heeter challenges the District Court's dismissal of her claims against Defendants-Appellees Honeywell and ADT. We agree with the District Court that Ms. Heeter's claims lack proximate cause, and, therefore, we will affirm.

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

2

**I**

As we write for the benefit of the parties, we set out only the facts necessary for the discussion that follows. Ms. Heeter and her husband Robert Heeter contacted ADT in late 2014 about installing a security system in their weekend residence in Benton, Pennsylvania. When speaking with an ADT representative, the Heeters stated that they were "not so much concerned about the property in the house but want a system that will alert us when someone comes into the house." App. 40. The representative explained that the Heeters would receive an immediate text and call notification anytime there was an interruption with the service or connection of the system, and that ADT provided 24/7 coverage. Ms. Heeter was particularly concerned about one resident of the area, Mr. Cea Jay Chattin, whom Ms. Heeter knew to have "a tortured past" and "conscious disregard for the well-being of others and in particular, her son, Bryan Harris." *Id.* at 41. Mr. and Ms. Heeter had ADT install the "ADT Pulse" security system in November 2014.

At approximately 7:00 a.m. on March 26, 2015, a weekday when the Heeters were not at their Benton residence, Chattin broke into it. He entered through a window, disconnected the phone lines on the ADT alarm system, and removed the Honeywell control panel from the wall. The Heeters did not receive an alert or notification about the break-in. Chattin proceeded to steal several of the Heeters' heirloom firearms before leaving the house. From the Heeters' residence, Chattin drove approximately twenty minutes to reach Harris's apartment, where Chattin waited for hours for Harris to return from work.

Harris arrived at his apartment at about 8:00 p.m., where he saw Chattin outside. The two men had a conversation before Harris went inside. At some time after 10:30 p.m., Chattin entered the apartment and killed Harris, shooting him in the face with one of the stolen rifles. Chattin then attempted to stage the scene to look like a suicide.

The following day, March 27, the Heeters began their usual weekend trip to the Benton residence. When they arrived at 8:45 p.m., the Heeters saw their house had been burglarized, and immediately attempted to contact Harris. When they could not reach him, they called the police and Harris's employer. Harris's employer eventually found Harris inside his apartment and informed Ms. Heeter that her son had been murdered. The Heeters never received a notification from ADT about the break-in or the disconnection of the phone lines.

## II

Ms. Heeter initiated this diversity action in federal court on February 3, 2016. In her complaint, she asserted several claims under Pennsylvania law: (1) fraud against ADT; (2) product liability for defective design against ADT and Honeywell; (3) negligence against ADT and Honeywell;[1] (4) wrongful death against ADT and Honeywell; (5) survival against ADT and Honeywell; and (6) a claim under the Pennsylvania Unfair Trade Practices and Consumer Protection Law against ADT.

Honeywell moved to dismiss Ms. Heeter's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). ADT answered the complaint and then moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). After hearing oral

---

[1] Ms. Heeter later withdrew this claim against Honeywell.

4

argument, the District Court granted both motions on July 1, 2016, finding that Appellees' conduct was not the proximate cause of Harris's tragic murder. Ms. Heeter appeals.

## III[2]

Causation consists of "two separate and essential concepts" in Pennsylvania law: "cause-in-fact and legal, or proximate, cause." *Reott v. Asia Trend, Inc.*, 55 A.3d 1088, 1103 (Pa. 2012). "Cause-in-fact" means causation in the "but for" sense – that "a defendant's allegedly wrongful act is a cause-in-fact if the plaintiff proves that the harm he sustained would not have happened . . . but for the defendant's act." *Id.* Proximate cause refers to "that point at which legal responsibility should attach to the defendant as a matter of fairness." *Id.*; *see also Klages v. Gen. Ordnance Equip. Corp.*, 367 A.2d 304, 313 (Pa. Super. Ct. 1976) ("Proximate cause is designed not only to allow recovery for damages incurred because of another's act, but also to define such limits on recovery as are economically and socially desirable." (citing *Whitner v. Lojeski*, 263 A.2d 889 (Pa. 1970))). There is no dispute between the parties that liability under all of Ms. Heeter's

---

[2] The District Court had jurisdiction over this action pursuant to 28 U.S.C. § 1332. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We review the District Court's grant of Rule 12(b)(6) and Rule 12(c) motions *de novo*. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 230 (3d Cir. 2008); *DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 259 (3d Cir. 2008). On a motion to dismiss pursuant to Rule 12(b)(6), we, like the district court, must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 233 (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). On a motion pursuant to Rule 12(c), judgment should "be granted where the moving party clearly establishes there are no material issues of fact, and that he or she is entitled to judgment as a matter of law." *DiCarlo*, 530 F.3d at 259.

state law claims requires a showing of proximate cause. And because Ms. Heeter's failure to allege proximate cause was the sole basis for the District Court's decision, it is the only issue before us in this appeal.

As an initial matter, Ms. Heeter and the Appellees dispute under what circumstances proximate cause can be determined by the court. Under Pennsylvania law, a "judge may determine that no jury could reasonably differ as to whether the plaintiff has sufficiently established a causal link. In such cases, our trial courts are charged with performing their standard gatekeeping function in determining which cases should be permitted to be argued to a jury." *Toney v. Chester Cty. Hosp.*, 36 A.3d 83, 99 (Pa. 2011) (citing *Ford v. Jeffries*, 379 A.2d 111, 114 (Pa. 1977)); *see also Vattimo v. Lower Bucks Hosp., Inc.*, 465 A.2d 1231, 1234 (Pa. 1983) ("If issues are raised on which a jury may not reasonably differ, it is proper for the trial court to decide them" (citing Restatement (Second) of Torts, § 434 (Am. Law. Inst. 1965))). Because we hold that a jury could not reasonably differ as to whether Appellees' conduct proximately caused Ms. Heeter's harm in this case, the District Court did not err in deciding the issue itself.

In order to establish proximate cause under Pennsylvania law, a plaintiff must show that "the defendant's act was a 'substantial factor' . . . in bringing about the plaintiff's harm." *Reott*, 55 A.3d at 1103 (quoting *Ford*, 379 A.2d at 114). Three considerations are important when determining whether a defendant's conduct was a "substantial factor" in bringing about the harm at issue: (1) "the number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it"; (2) "whether the actor's conduct has created a force or series of forces

6

which are in continuous and active operation up to the time of the harm, or has created a situation harmless unless acted upon by other forces for which the actor is not responsible;" and (3) "lapse of time." *Vattimo*, 465 A.2d at 1234 (quoting Restatement (Second) of Torts § 433 (Am. Law Inst. 1965)). Having independently weighed these considerations, we agree with the District Court that in this case Appellees' conduct was not a substantial factor in producing the harm.

First, we agree with the District Court that myriad other matters had a far greater effect on the murder of Harris than the conduct of the Appellees. These matters include: Chattin's "conscious disregard for the well-being of . . . in particular, [Ms. Heeter's] son, Bryan Harris," App. 41; his decision to steal the heirloom firearms; his decision to drive to Harris's apartment twenty minutes away and stake it out for hours; his conversation with Harris outside the apartment; and the premeditated nature of the murder.

As to the second consideration, Appellees' actions here did not create a force in continuous operation up to the time of the harm. The chain of events on the day of Harris's murder did not begin with the faulty alarm system. Rather, Appellees' actions were harmless until "acted upon by other forces for which the actor is not responsible" *Vattimo*, 465 A.2d at 1234 (quoting Restatement (Second) of Torts § 433). Here, that other force was Chattin.

Third, although the lapse of time between the conduct at issue and the harm incurred is not dispositive on its own, it works in concert with the other two considerations to negate proximate cause in this case. *See, e.g.*, *Am. Truck Leasing, Inc. v. Thorne Equip. Co.*, 583 A.2d 1242, 1243-44 (Pa. Super. Ct. 1991) (holding the harm to

7

be too far removed chronologically and factually from the original negligence).  The fifteen-hour time lapse between Appellees' conduct and Harris's murder, including many hours spent by Chattin waiting for Harris, speaks to the remoteness of events.

Further, Chattin's premeditated murder, remote in distance and time from Appellees' conduct, was not foreseeable and constitutes a superseding cause.  Intervening criminal action is not *per se* superseding, but becomes so when, "looking retrospectively from the harm through the sequence of events by which it was produced, it is so extraordinary as not to have been reasonably foreseeable."  *Vattimo*, 465 A.2d at 1237; *see also Powell v. Drumheller*, 653 A.2d 619, 624 (Pa. 1995).  The chain of events and ultimate harm here were not foreseeable, and the criminal action of Chattin is, therefore, a superseding cause of harm that breaks the causal chain.

Had the harm to Harris occurred near the Heeters' residence, which ADT was contracted to protect, the question of proximate cause might well have been one for a jury to decide.  Harm inflicted this far from the residence is another matter.  Ms. Heeter has not identified any authority holding an alarm company liable for harm distant from the premises that the company was charged with securing.  At bottom, and notwithstanding our deep sympathy for the Heeters and all affected by the tragic loss of Bryan Harris, the causal chain here is simply too attenuated in time and distance, and too disrupted by the decisions and actions of Chattin, to justify a finding of proximate cause.  *See, e.g.*, *Brown*

8

*v. Phila. Coll. of Osteopathic Medicine*, 760 A.2d 863, 870 (Pa. Super. Ct. 2000) (rejecting "attempts . . . to link damages to acts well beyond the point of foreseeability").[3]

## IV

For the foregoing reasons, we will affirm the District Court's dismissal of this action.

---

[3] Ms. Heeter also argues that reversal is due under the "relaxed" standard of the "doctrine of increased risk of harm." Br. of Appellant 35. Under this doctrine, drawn from the Restatement (Second) of Torts § 323(a), "once a plaintiff has introduced evidence that a defendant's negligent act or omission increased the risk of harm to" plaintiff, and "the harm was in fact sustained," the jury must determine "whether or not that increased risk was a substantial factor in producing the harm." *Hamil v Bashline*, 392 A.2d 1280, 1286 (Pa. 1978). Ms. Heeter raises this argument for the first time on appeal, and therefore it has been waived. *See In re Diet Drugs Prod. Liab. Lit.*, 706 F.3d 217, 226 (3d. Cir. 2013).